# LONABAUGH v. LONABAUGH.

(No. 1793; May 25, 1933; 22 Pac. (2d) 199.)

24

For plaintiff in error, there was a brief by *Durham & Bacheller,* of Casper, Wyoming, and oral argument by *E. Paul Bacheller.*

For the defendant in error, there were briefs by *E. E. Lonabaugh,* and *W. S. Metz* of Sheridan, Wyoming, and *W. L. Walls* of Cheyenne, Wyoming.

28

RINER, Justice.

On the 15th day of December, 1930, the District Court of Sheridan County entered a decree of divorce in favor of the plaintiff in error, hereinafter usually referred to as the "wife," and against the defendant in error, subsequently herein generally mentioned as the "husband." By that decree, the latter was required to pay the wife the sum of $225 per month for the support and maintenance of herself and the two children of the parties—$125 to her and $50 to each of the children—commencing January 1, 1931. Thereafter, on April 9, 1932, the husband filed his application for a reduction of the payment, required as aforesaid, to $150 per month, alleging a substantial and material change in his financial circumstances. Responding to this application, the wife filed an answer interposing two defenses. In outline, the first of these consisted of a general denial of all the allega-

tions of the application aforesaid which undertook to set out the husband's altered financial condition, and the other pleaded that the decree of divorce previously rendered had incorporated therein the terms of a contract which the parties had theretofore executed, fully settling and determining their property rights, and wherein the husband had agreed to pay the wife the sum of $225 for the support of herself and for the support and education of their minor children, said decree being entered pursuant to the terms of this contract. A reply was filed admitting the entry of the decree and its terms, the execution of the contract by the parties, and that its provisions were as alleged in the answer, whose remaining allegations were denied.

The matter was heard by the court on the proofs submitted by the parties on July 8th and 9th, 1932, and, on the date last mentioned, the court by its order reduced the amount required to be paid by the husband to the wife, as prayed by him, directing that $75 be paid to her and $37.50 each for the benefit of the two children. To review this order, the present proceeding in error is prosecuted.

It is contended that, as the decree of divorce entered on December 15, 1930 "was the result of a written contract of the parties" made prior to its entry, it was "not subject to revision or modification" by the district court. Two cases are cited in support of this contention, one Newbold v. Newbold, 133 Md. 170, 104 Atl. 366, 368, and the other, a case decided by this court, Moore v. Moore, 33 Wyo. 230, 237 P. 235, 236.

We think that these decisions are not applicable to the facts shown by the record now before us. In the Newbold case decided by the court of appeals of Maryland, while there was a prior contract between

the parties that a stated sum should be paid to the wife as compensation to her and as maintenance for her and the child of the marriage, and while there had been a change in the circumstances of the parties due to the remarriage of the wife, yet the decree of divorce recognized and adopted the agreement of the parties to the extent of providing that the sum ordered to be paid the wife should be paid "during the lifetime of the said Adelaide Passano Newbold." The court held that this provision did not constitute alimony, as recognized by the jurisprudence of the state, inasmuch as it was regarded as settled in the jurisdiction that alimony ceased upon the death of either of the parties. It was pointed out, as the distinguishing characteristic of the case before the court, that the payment as ordered was enforcible, even though the wife survived the husband. Concluding its reasoning on the point, the opinion, quoting from the earlier case of Emerson v. Emerson, 120 Md. 584, 87 Atl. 1033, 1038, says, referring to the contract of the husband: "The Court having embodied his agreement in the decree, we are of the opinion that a Court of Equity should not disturb it." The Emerson case expressly recognized the power of the trial court to modify a decree for alimony on account of the changed circumstances of the parties, although there had been a prior agreement relative to the matter, for in the opinion in that case this language is used:

"We are of the opinion that, if a court approves the provisions of an agreement as to alimony, it can incorporate them in its decree; but it, nevertheless, has the same power of modification of the decree as it had in the absence of an agreement."

In the case at bar, there was no such provision as is quoted above, incorporated either in the contract

or the decree. Indeed, the phraseology of the latter is quite to the contrary for its language was, "In the event of the remarriage of the plaintiff herein, the said monthly payments shall cease and terminate as to her portion of $125." Provision was also made in this decree for a change, under certain circumstances, in the amounts due to be paid for the children.

Viewing the terms of the decree at bar in the light of the Maryland cases alone, we think it plain that it was one for alimony such as would be governed by the provisions of sec. 5006, Wyo. Comp. St. 1920 (sec. 35-124, Wyo. Rev. St. 1931) reading:

"After a decree for alimony or other allowance for the wife and children, or either of them, and also after a decree for the appointment of trustees to receive and hold any property for the use of the wife or children, the court may, from time to time, on the petition of either of the parties, revise and alter such decree respecting the amount of such alimony or allowance, or the payment thereof, and respecting the appropriation and payment of the principal and income of the property so held in trust and may make any decree respecting any of said matters which such court might have made in the original action."

Under statutes of this character, it is generally held, as stated in the very full note on the point, with collected cases, in 58 A. L. R. 639, that "where a court has the general power to modify a decree for alimony or support, the exercise of that power is not affected by the fact that the decree is based on an agreement entered into by the parties to the action."

It is argued that, as the paragraph of the prior agreement of the parties here relative to the amounts to be paid to the wife for her and the children concluded with the words, "this agreement shall be binding upon the heirs, executors, administrators and

assigns of the parties thereto,'' the Newbold case is applicable. But aside from the fact that the language of the contract in that case and this regarding the period during which payments should be made differs radically, as we have seen—the clause relied on was not embodied in the decree of the District Court of Sheridan County. That court evidently declined to give it the sanction of judicial approval and, under section 5006, supra, we consider it had plenary power to do that.

In Erickson v. Erickson, 181 Minn. 421, 232 N. W. 793, 794, a case involving the modification of a decree of divorce in respect to the alimony therein provided, where the wife and husband, pending the divorce action, had entered into a stipulation releasing the latter from any further payments than as fixed thereby, the court held that the court's statutory power to make the modification order was not destroyed and, in the course of the opinion, said:

"The court made no mention of the stipulation in its findings, conclusions of law, or judgment. The paragraph just quoted, releasing the defendant from further liability for alimony, was not included in the court's findings, conclusions of law, or judgment. It is the claim of the defendant that the stipulation between the parties was a final property settlement and was adopted by the court in the divorce decree, and that the decree cannot now be amended. It may be inferred that the stipulation was known to the court at the time the decree of divorce was rendered, and that the court fixed the amount of the alimony on the basis of the stipulation. It may be further inferred that the court intentionally omitted from its decree any reference to the stipulation and refused to adopt, or be bound by, the release clause therein, above quoted. * * * Under our statute giving the court the same powers in revising a decree for alimony as it had in the original action, it seems entirely consistent

to hold that it may on such revision disregard an agreement of the parties on the subject."

The case of Moore v. Moore, relied on by appellant, also presented facts widely divergent from those now before us for consideration. There the defendant husband admitted that the wife had advanced to him from her own personal funds, in the neighborhood of $10,000, and the district court, in declining to modify the previous divorce decree which required certain payments to be made to her, expressly found that "the plaintiff during her marriage with defendant contributed not less than five thousand dollars from her own funds to the support of plaintiff and defendant; that the provisions of the decree as to permanent alimony chargeable to defendant were 'in the nature among other things of a settlement of the claim of plaintiff against defendant, and that therefore the said decree should not at this time be modified.' " The record here discloses no such situation and obviously demands the application of a different legal principle.

As intimated by this court in Moore v. Moore, supra, there must be a change in the circumstances of the parties since the decree of divorce was entered. otherwise no modification of it relative to alimony can be had. This is so because it must be presumed that the allowance fixed in the decree in the first instance was upon a full disclosure of the conditions as they existed at that time and that such an amount was fixed by the court as those conditions fairly required. A quite frequently alleged change in circumstances to be met with in cases of this kind relates to the reduced financial ability of the husband to pay and that is the claim advanced for the husband in this litigation. Where the latter's financial condition has become impaired so that he is unable to

meet the obligation imposed by the original decree, it is incumbent upon the court possessing jurisdiction under the statute quoted above to make a proper alteration thereof.

It is contended for the wife that the record in this case discloses no such change of circumstances in the financial ability of the husband to meet the payments due under the decree of December 15, 1930, as would permit the district court to make the modification it did. With that contention we are unable to agree. A careful examination and tabulation of the income and resources of the husband as set forth in the record makes it quite clear to us that on the date last above mentioned, as compared with their status at the date of the hearing of this matter in the district court, his income and resources have materially altered for the worse and that he is no longer able to make the payments originally ordered.

In making our examination of this branch of the case, we may say that, taking into full account the difficult situation of the wife and the children, whenever there has been a doubt as to impairment of the items showing the husband's financial ability, we have resolved it against him. Even so, there is substantial evidence to support the trial court's order in the premises. There is proof that, in order to meet the alimony payments adjudged, the husband has been obliged to borrow heavily; that at the very least, an extremely large percentage, if not all, of the present income of the husband would be required to meet the original terms of the decree; that since the decree aforesaid was made, the father of the husband has been obliged to help him repeatedly to make these payments; that he has relied upon his father's bounty in order to meet current personal expenses; and finally, there is undisputed testimony that the father

of the husband is no longer able to furnish aid as in the past.

In the wife's motion made in the court below for a dismissal of the proceedings, it is stated that the record "shows that the only financial condition that has changed is the financial condition of E. E. Lonabaugh" (the father). With this statement we do not agree but, assuming it to be so, there is substantial evidence to show, as has already been intimated, that without the father's aid, the payments originally directed cannot be met. As that aid concededly cannot be had, it is apparent, even under the view plaintiff in error takes of the record, the son's circumstances have materially changed.

A case decided by the appellate division of the Supreme Court of New York is here pertinent—Sidway v. Sidway, 156 App. Div. 61, 141 N. Y. S. 14. In reducing an original allowance of alimony to a divorced wife with two minor children from $350 a month to $150 a month, the court said:

"For many years he (the husband) has received very substantial gratuities from his mother, a woman of large means, which enabled his family to be supported in decent comfort. For several years before the bringing of this action, his mother very generously made direct advancements to the plaintiff for her proper support and the education and maintenance of the minor children. These advances were conditioned upon the plaintiff's refraining from legal action against her husband. When this action was brought, the intervention of the defendant's mother ceased. Her assistance to these parties was purely voluntary, and the court is without power to coerce its renewal, even though it so desired. While it may be expected reasonably that a mother who has been generous in the past will be generous in the future, yet she alone is the judge of the measure and circumstances of her generosity. An award of alimony

in this action should not be based upon an assumption that, if it be necessary to enforce the award by contempt proceedings against the defendant, the mother through love for her son will come to his aid rather than see him subjected to imprisonment. Unless this assumption be made, then there is no apparent basis for the amount of alimony awarded in the interlocutory judgment. We are concerned greatly on this appeal with the situation of the two minor children, who are now of the age when suitable education according to their station in life becomes somewhat expensive. Even as to them, under the circumstances of this case, the court has no power to coerce the defendant's mother directly, and should refrain from attempting to do so even indirectly. There is nothing to indicate that these children will meet with indifference or neglect from those who should be and doubtless are interested in their well being."

In the case at bar, the matter of aid from the husband's father can no longer be looked to in support of the payments that may be required of the defendant in error. This factor, as the case now stands, may not in justice be disregarded.

The claim is made that the trial court prevented the wife from eliciting competent and relevant facts upon cross-examination. If the proof offered had been received, we are unable to see that it would or should have affected the final result in the matter and, hence, the rulings made were not prejudicial. 38 Cyc. 1333, 4 C. J. 1004. Some offers of proof were properly excluded because the facts were already in evidence. For example, an offer was made by the wife to prove by the husband on the witness stand that during the years 1929 and 1930 "there was deposited in the firm account of Lonabaugh and Lonabaugh in the Bank of Commerce in the city of Sheridan a sum in excess of $50,000." This was excluded on objection, but the bank deposit sheets of the firm for the years specified had already been received in

evidence. No question was made that they were not accurate.

The court permitted counsel for the wife to interrogate the husband very freely concerning his personal bank account. Stress is laid upon the fact that the husband's deposits appeared to be more than his claimed income. He does not seem to have been asked to supply an explanation of this; neither was he requested to list the amounts received by him from his father, something which might have thrown some considerable light on the matter.

Complaint is made that an offer of proof as to the dissipation by the husband of a savings account to the credit of the two children was excluded, but the wife had already testified apparently quite fully on the point. The offer of proof was in some essential particulars at variance with her own testimony concerning the matter. We perceive no prejudicial error in the ruling.

Something is said in the briefs about the husband's extravagant and expensive mode of life. As we read the record, the charge of failing to live frugally and with due regard to the matter of remaining circumspectly within the boundaries of their income might very well be laid at the door of both parties to this controversy. It is common knowledge that a great many people are now suffering from a failure to regard that very essential. The father of the husband, testifying as a witness in the case, expressed his disapproval of their course of conduct in this respect. Taking the wife's offers of proof at their face value, however, we are not inclined to think that they disclosed anything which should properly change the result reached by the district court.

It is unfortunate that the question of reducing the amount of the payments due to be paid the wife and

children under the decree was ever obliged to be raised at all. However, it is common knowledge, too, that financial reverses have overtaken countless families in this country in the past two years as a result of depressed business conditions. If, at the time of the hearing of this matter, the parties to this record had been living in harmony as a united family, unquestionably the allowances each could receive under the circumstances shown would necessarily have been obliged to be radically reduced as compared with what they were getting in 1930. It is difficult to see why the fact that the family is rent asunder should accomplish a different result. If later on, improved circumstances should develop for the husband, then upon proper showing, a revision upward of the order now in question, of course, can be made. The station in life of the parties, the manner in which they have lived, and the income of the husband are all very properly to be taken into consideration in determining the amount of alimony which should be paid— the controlling element naturally being the ability of the husband to pay. We must conclude, therefore, that the order of the district court should be affirmed.

Relative to the matter of attorney's fees for the wife in this court, under the conditions disclosed, we feel we cannot make an allowance commensurate with what we should ordinarily regard as a proper fee for work of this character in this court. The husband has borne the expenses of both sides of this litigation; he has defrayed the cost of his wife's travel to and from California to attend the hearing; the transcript of record consisting of some 332 pages obviously has been furnished at no slight expense; and his financial ability to meet payments ordered is, as we have seen, seriously impaired. With all these and other elements bearing on the matter in mind, we have decided that

an allowance of $100 for attorney's fees must be regarded as adequate and an order will be made to that effect.

*Affirmed.*

KIMBALL, Chief Justice, and TIDBALL, District Judge, concur.