683 P.2d 62
**Bonnie G. ALTMAN,
Respondent-Appellant,**

v.

**Morton I. ALTMAN, Petitioner-Appellee.**

**No. 7433.**

Court of Appeals of New Mexico.

June 5, 1984.

Jacob G. Vigil, Padilla, Riley & Vigil, P.A., Albuquerque, for petitioner-appellee.

Myra C. Lynch, Jane G. Printz, Paskind, Lynch, Dow & Printz, P.A., Albuquerque, for respondent-appellant.

## OPINION

ALARID, Judge.

This case involves the propriety of a New Mexico court's modification of a Florida divorce decree. We consider the district court's jurisdictional authority to modify both the child support and alimony portions of the Florida judgment. We also examine the applicability of the "clean hands" doctrine to this case and the correctness of the district court's attorney's fee award. Finding no error in the result reached by the district court, we affirm.

Morton I. Altman (petitioner-husband) and Bonnie G. Altman (respondent-wife) were divorced in Florida on August 29, 1980. Respondent received custody of her three minor children. The divorce decree incorporated a Property Settlement Agreement which also provided that respondent was to receive rehabilitative alimony. She was to receive $2,200 monthly in alimony from July 1, 1980 to June 30, 1983; and $1,500 monthly thereafter for three years.

Petitioner was also required to pay child support at $100 monthly per child from July 1, 1980 to June 30, 1986; and $300 per child monthly thereafter until each child reached majority.

Petitioner remarried in October, 1980. He moved to New Mexico in August of 1981 with his new wife and stepchild. Although husband at the time of divorce earned a gross annual income of $225,000 in his practice of podiatry medicine, his subsequent New Mexico employment with Veterans' Administration Medical Center allowed him a gross annual income of only $61,000 (at the time of the hearings in this case).

In July, 1982, petitioner without consulting respondent reduced his monthly payments from $2,500 to $1,500; August, $1,500; September, $1,500; October, $1,000; November, $800; December, $800; January, 1983, $500; February, $500; and March, $1,500. For April and May of 1983, when he was obligated to pay $2,400 in alimony and child support, petitioner paid nothing.

Respondent filed for registration of the support obligation in New Mexico district court on November 23, 1982, pursuant to our Revised Uniform Reciprocal Enforcement of Support Act (RURESA). NMSA 1978, §§ 40–6–1 through 40–6–41 (Repl. Pamp.1983). Petitioner was notified of the registration; he answered and petitioned the court for relief on December 14, 1982. In his petition, petitioner asked for termination of his alimony obligations based on changed circumstances. Respondent moved for dismissal of the petition, arguing the court lacked subject matter jurisdiction to grant the requested relief.

Respondent testified at the May 3 and 11, 1983 hearings in New Mexico. She said her monthly living expenses totalled $2,668 (not including insurance, house repairs and litigation-related expenses). As to her rehabilitative efforts, she testified to attending secretarial school and working at various jobs earning from $5 to $5.50 hourly,

but she said she was unemployed at the time of the hearing.

Following the hearings, the district judge awarded respondent arrearages owing for support and alimony as of August 31, 1983 ($14,131 plus interest), but reduced her alimony to $600 per month beginning December 1, 1982 (the month in which petitioner filed for relief), continuing through June 30, 1983. After this date, alimony was to be reduced to $400 for one year; and then reduced to $200 monthly thereafter until June 30, 1985, at which time alimony payments would cease. The court also required petitioner to pay respondent $300 monthly for child support per child, effective December 1, 1982 until each child attained 18 years of age. Finally, the order awarded respondent $1,000 in attorney's fees.

## DISCUSSION

■ This proceeding was initiated by respondent pursuant to Section 40–6–38. This section is part of. New Mexico's version of RURESA, *supra*, whose purpose it is to improve and extend, by reciprocal legislation, the enforcement of support duties between the states. Section 40–6–1. *Desertion and Nonsupport*, 23 Am.Jur.2d § 118, at 968 (1983) explains RURESA in the following way:

> The Uniform Act is designed to provide an inexpensive, simplified and effective means whereby an obligee in one state (the initiating state) can enforce the duties of support owed by an obligor in another state (the responding state) without necessarily having to leave the state, and without getting the parties involved in other complex, collateral issues.

(footnotes omitted). Section 40–6–38 permits a former spouse who claims non-payment of support obligations to register her Florida (initiating state) support order in a New Mexico (responding state) district court. The court clerk is to docket the case and give notice to the obligor and the prosecuting attorney in accordance with Section 40–6–38(C).

Respondent followed proper RURESA registration procedures here. The obligor was allowed a hearing to contest the attempted enforcement of the support obligations. Petitioner alleged changed circumstances as a reason for the district court to permit termination or modification of future obligations under the Florida order. The issue of arrearages was not appealed. Respondent challenges the judge's allowance of a hearing on petitioner's changed circumstances issue, because Section 40–6–39(C) permits the obligor at a Section 40–6–39(B) hearing to "present only matters that would be available to him as defenses in an action to enforce a foreign money judgment * * * *" This is a subject matter jurisdiction issue. In analyzing this question, we treat alimony and child support separately.

## I. Subject Matter Jurisdiction

### A. *Alimony*

Respondent challenges the district court's jurisdiction to consider the changed circumstances issue, based on Section 40–6–39. The parties and court below assumed "duty of support" (Section 40–6–2(F)) to include both child support and alimony obligations. Although RURESA clearly applies to child support we need not decide in this case whether or not the Act applies to alimony in considering the jurisdictional issue because our conclusion would remain the same in either event.

■ 1. If RURESA applied to alimony, the district court would have to apply New Mexico law (pursuant to Section 40–6–7) in determining the obligor's duties of support. In New Mexico a defaulting obligor may move to modify a support order, on grounds that circumstances have substantially changed since issuance of the order. *Chavez v. Chavez*, 98 N.M. 678, 652 P.2d 228 (1982). This also applies to alimony awards. *See Benavidez v. Benavidez*, 99 N.M. 535, 660 P.2d 1017 (1983).

Section 40–6–39 of RURESA is ambiguous in the context of New Mexico's divorce practice. Subsection A provides that upon registration by the obligee of the foreign support order, the order shall be treated in

the same manner as a support order issued by a court of this state and "may be enforced and satisfied in like manner." Subsection C, however, appears to conflict with Subsection A in providing that "[a]t the hearing to enforce the registered support order" the obligor may present only such defenses as are available in an action to enforce a foreign money judgment. The conflict arises because modification proceedings are a method of obtaining relief from the support order. *See Corliss v. Corliss*, 89 N.M. 235, 549 P.2d 1070 (1976); *Lumpkins v. Lumpkins*, 83 N.M. 591, 495 P.2d 371 (1972).

Subsection B resolves the apparent conflict between Subsections A and C. That subsection gives the obligor twenty days after the mailing of the notice of registration "in which to petition the court to vacate the registration or for other relief." Petitioner in this case answered and petitioned for relief; the request for relief empowered the district court to consider modification of the Florida decree. Therefore, if RURESA applied to alimony obligations, the district court is invested with authority to modify a foreign divorce decree. *But see Adams v. Adams*, 441 S.W.2d 917 (Tex.Civ.App.1969) (where Texas version of RURESA specifically excludes alimony from its terms).

2. If RURESA does not apply to alimony, the district court nevertheless had authority under NMSA 1978, Section 40–4–7 (Repl.Pamp.1983) to modify provisions in the Florida decree for future alimony payments.

■ The *Corliss* case sets out the proper analysis for considering alimony modification of foreign decrees. The preliminary question is the effect of the foreign decree. From the record it appears this decree was a final and proper judgment of the Florida court concerning alimony, child support and custody, which was fully litigated and agreed to by all the parties. Thus, under Article IV, Section 1 of the United States Constitution, the Florida decree is entitled to full faith and credit. *Corliss; Lumpkins.*

■ As in *Sistare v. Sistare*, 218 U.S. 1, 30 S.Ct. 682, 54 L.Ed. 905 (1910), when future alimony payments (as opposed to vested, past obligations) are involved, we must look to the statutes of the state in which the decree was granted "to see if the enforcement of the alimony award was discretionary." *Corliss.* Florida law provides for modification of an alimony award where "the circumstances or the financial ability of either party has changed * * *" Fla.Stat. § 61.14(1) (1981). *See Maas v. Maas*, 438 So.2d 1068 (Fla.App. 2d Dist. 1983); *Anderson v. Anderson*, 438 So.2d 510 (Fla.App. 5th Dist.1983); *Wanstall v. Wanstall*, 427 So.2d 353 (Fla.App. 5th Dist. 1983). Because Section 61.14(1) of the Florida statutes provides for modification of the Florida decree, we hold that enforcement of the decree is discretionary. Thus, the district court here did not err in modifying the decree pursuant to petitioner's request.

3. Another course available in resolving the alimony issue is to rely on the choice of law provision contained in the parties' Property Settlement Agreement. The Agreement provides that it "shall be construed and governed in accordance with the laws of the State of Florida, regardless of the jurisdiction in which any party may seek enforcement * * * * *" The Agreement then recites that each party understands the general rule on modification "upon a showing of substantial change of circumstances."

Section 40–4–7 gives the New Mexico court subject matter jurisdiction to consider the alimony modification. Once this authority is found to exist, the New Mexico district court may, pursuant to the choice of law provision, turn directly to the Florida statute in determining the prospective modificability of the alimony award. *See* Fla.Stat. § 61.14(1). As explained previously, Florida law allows for prospective modification of alimony awards.

■ The foregoing discussion reveals that we are not required to decide in this case whether RURESA applies to facilitate

enforcement of alimony obligations. The district court, under both Florida and New Mexico law, had authority to modify the alimony provisions of the Florida decree.

4. The next question is whether the district court properly exercised its authority. The court made the following conclusions regarding the changed circumstances issue:

1. This Court has jurisdiction to enforce the terms of the Florida Decree under the registration provisions of Section 40–6–35 *et seq.*, New Mexico Statutes Annotated (Uniform Reciprocal Enforcement of Support Act) and the Full Faith and Credit Clause of the United States Constitution (Article IV., Section 1.).

2. A material change of circumstances has occurred under Florida law which affects Morton I. Altman's obligation to support Bonnie Altman.

3. There was a material change in the rehabilitative nature of the alimony awarded since Bonnie Altman, immediately following the divorce, received vocational and guidance counseling, attended approximately one year of school, and has been employed as a secretary.

4. Bonnie Altman is currently capable of being employed as a secretary on a full-time basis.

5. A material change in circumstances has occurred to Morton I. Altman in that when he was forced to leave Florida he had to accept a change in income from approximately $225,000.00 a year to approximately $61,000.00 a year.

6. Morton I. Altman's remarriage and support of a new wife and child also constitute a change in circumstances which do not affect his child support obligation but do affect his continuing ability to support Bonnie Altman.

7. Florida law is controlling as provided by the agreement entered into between the parties on July 8, 1980.

 There is no challenge to the findings and no claim that the findings do not support the conclusions. Based on the above-quoted conclusions, the judge reduced the future alimony award as described above on grounds of changed circum-

stances. We will not reweigh the evidence, *State v. Santillanes*, 86 N.M. 627, 526 P.2d 424 (Ct.App.1974), or substitute our judgment for that of the trial court. *Schaab v. Schaab*, 87 N.M. 220, 531 P.2d 954 (1974). Having reviewed the record, we find no abuse of discretion in the judge's reduction of alimony on grounds of a substantial change of circumstances.

## B. *Child Support*

 The term "duty of support", as used in RURESA, clearly encompasses the obligor's duty to pay child support. Sections 40–6–1, 40–6–2; *see* 23 Am.Jur.2d, *supra*, at 967. Such duties for purposes of RURESA are defined by the laws of the state where the obligor (petitioner here) was present for the period during which support is sought. Section 40–6–7. This choice of law provision was intended to prevent the obligee from having the absolute right to choose the applicable law as her interest might dictate. 23 Am.Jur.2d, *supra*, § 122 at 972; *see Daly v. Daly*, 21 N.J. 599, 123 A.2d 3 (1956).

In the instant matter, petitioner resided in New Mexico after August, 1981. Because the obligor resided in this state during the period for which his former wife is seeking support (July, 1982 to present), we apply New Mexico law in reviewing his support duties. Section 40–6–7.

 It is clear under New Mexico law that child support payments under a divorce decree may be modified upon a showing of changed circumstances after adjudication of the previous award. *Chavez; Unser v. Unser*, 86 N.M. 648, 526 P.2d 790 (1974). Respondent here did not request modification of future child support payments. However, in light of the judge's proper reduction of the alimony award, we see no error in his unilateral decision to increase the child support award from $100 monthly (per child between December 1, 1982 and June 30, 1986) to $300 monthly (per child starting December 1, 1982 until each child reaches majority). Respondent's alimony was sufficiently re-

386

duced so as to permit the district court in its equitable powers to increase the child support award. This is consistent with the provisions in the Property Settlement Agreement incorporated into the court's decree that provide for increase of child support upon termination of alimony. Further, petitioner does not complain of the increased child support that was imposed.

## II. "Clean Hands" and Attorney's Fees

 Respondent next argues that the equitable doctrine of "clean hands" prevents the district court, in exercising its equity powers, from modifying the divorce decree upon the husband's motion until he has paid the arrearages and thus cleansed his hands. We apply Florida law, pursuant to the parties' Agreement. The lower court's exercise of equitable authority will not be disturbed absent a showing of clear error. *Blanton v. Blanton*, 154 Fla. 750, 18 So.2d 902 (1944). The clean hands doctrine is inapplicable to prevent an obligor's motion to modify a divorce decree where allegedly delinquent arrearages have in fact been paid. *See Watson v. McDowell*, 110 So.2d 680 (Fla.App.1959).

 Respondent in her brief-in-chief alleged delinquency of $15,300 in support arrearages. Petitioner answers (and respondent admits in her reply) that respondent has in fact received over $15,000 from him, which was garnished from his E.F. Hutton account pursuant to a separate Florida garnishment proceeding. "Once in the Court registry," says respondent, "it was agreed by all counsel that the money should be applied to the arrears." We are not concerned with the source of the funds received, or with the obligor's willingness to pay; the fact that arrearages have been paid ends the inquiry. The clean hands doctrine does not apply, so we need not consider respondent's argument on this point. The trial judge properly considered the husband's modification request.

 As to the matter of attorney's fees, RURESA does not prevent securing of private counsel, but neither does it provide for payment of the obligee's (respon-

dent's) attorney's fees should she decide to secure private counsel. The prosecuting attorney was presumably available to secure payment of the obligation. RURESA discusses costs and fees in Section 40–6–15 in terms of filing fees and other costs, but makes no mention of attorney's fees.

 However, we agree with respondent that a district court may award reasonable attorney's fees to a wife who is defending against an effort to modify her rights under a property settlement agreement. *Yagoda v. Klein*, 305 So.2d 29 (Fla. App.1974). The district judge was fully apprised of respondent's income and other surrounding circumstances. Although the $1,000 award is less than what we might have allowed, *see Adams v. Adams*, 376 So.2d 1204 (Fla.App.1979), we will not second-guess the trial court's exercise of discretion.

## CONCLUSION

The district court did not err in asserting jurisdiction over and modifying the alimony and child support portions of the Florida divorce decree. The clean hands doctrine does not bar petitioner's motion to modify because he has in fact paid the arrearages. Finally, the district court did not err on the attorney's fees issue.

For the foregoing reasons, we affirm the district court's decision. Respondent shall bear the costs of this appeal. No attorney fees are awarded for the appeal.

**IT IS SO ORDERED.**

DONNELLY, C.J., and WOOD, J., concur.