**Mark DORR, Appellant (Plaintiff),**

v.

**Peggy J. NEWMAN, formerly Peggy J. Dorr, Appellee (Defendant).**

No. 89-74.

Supreme Court of Wyoming.

Jan. 26, 1990.

John M. Daly of Daly, Anderson & Taylor, P.C., Gillette, for appellant.

William D. Omohundro and Randall T. Cox of Omohundro & Palmerlee, Buffalo, for appellee.

Before CARDINE, C.J., THOMAS, URBIGKIT and GOLDEN, JJ., and ROONEY, J., Retired.

URBIGKIT, Justice.

Appellant Mark Dorr (Dorr) appeals from an amended order increasing alimony payments to his former wife, Appellee Peggy J. Newman (Newman). We affirm the decision of the district court except to require deletion of that portion of the final order which alters the tax consequences of the increased alimony award.

Dorr questions whether:

I. * * * the court erred in ordering additional alimony when additional alimony was not pled by defendant.

II. * * * there has been a sufficient change of circumstances to justify a modification of the decree.

III. * * * the evidence supports an increase in alimony.

IV. * * * the evidence supports the court's finding of fraudulent conveyances by appellant.

Newman, formerly Peggy J. Dorr, rephrases whether:

I. * * * there has been a sufficient change of circumstances to justify the modification of the divorce decree.

II. * * *, under the appropriate standard of appellate review, the record contains sufficient evidence to support the increase in alimony as ordered by the District Court.

III. * * * the District Court committed any error by increasing alimony in response to the appellee's petition.

Dorr generally addresses appropriateness of the relief granted by the district court in answering the Newman contempt petition. To answer that attack, we evaluate if alimony can be modified following entry of a divorce decree; if that modification was properly requested; if that modification was justified by a change of circumstances; if that modification was permitted within the sound discretion of the trial court; and finally, sufficiency of the evidence. This evaluation is hindered to some degree because of a wide difference in opinion between the litigants about the "facts" of this case.[1] Essentially, this case involves an ex-husband unwilling to make good on previously agreed to property settlement payments which resulted in the district court fashioning a remedy by adjusting alimony payments to meet the recognized needs of the ex-wife.

This divorce has drawn on the time and resources of three district court judges and five law firms. We decline the invitations implicit in the briefs presented to this court to become super-arbitrators and reweigh the legal effect here of economic distress conceded by both litigants. The district court was presented the unenviable task of providing a fair resolution to this divorced couple after years of venomous litigation. A quick review of the litigation history to this case puts into context the issues presented to this court.

Mark Dorr and Peggy Newman married in 1976. Ashley Nichole Dorr was born to their family in 1981.[2] On February 8, 1983, they were granted an uncontested divorce decree. As part of the divorce settlement, a Dorr–Newman partnership was established for:

The purpose of the partnership shall be to engage in the business of owning, operating and selling property and such other businesses as may be usual or incident thereto, or such further businesses as the partners may agree upon from time to time.

*Cf. Overcast v. Overcast,* 780 P.2d 1371 (Wyo.1989). When boom times in Gillette vanished so did any civility to this tenuous co-existence. Dorr remarried and then the litigants really began to fight.

In May 1984, Dorr filed a motion to modify the divorce decree and to clear up the terms of the child visitation agreement. That motion resulted in a order of July 19, 1984, clarifying custody and visitation. In June, Newman, residing with young Ashley in Colorado, petitioned the county court in Denver, Colorado for a change of name for their daughter. Not informed in advance of his daughter's name change from Ashley Nichole Dorr to Ashley Nichole Newman–Dorr, Dorr filed a motion for an order

---

**1.** Perhaps this footnote can be characterized as a "word to the wise or otherwise." *See Kost v. Thatch,* 782 P.2d 230 (Wyo.1989). Dorr's brief in statement of facts does not include a single record reference for the facts related. Newman responds:

The appellant's statement of the case refers to documents which are not in the record. Further, the statement of the case refers to numerous proceedings regarding child visitation and child custody, which matters are not relevant to the subject appeal.

Newman then offers a seven-page statement of the case with very detailed references to the record. Transcripts provided include sessions on May 24, 1984; April 15, 1988; August 23, 1988; and November 3, 1988; and twenty-eight various exhibits. Lacking the sheer capacity to determine from Newman what Dorr discussed as unjustified in the record, we rely on the record of proceedings and facts otherwise stated by Newman which direct us specifically to the oral testimony and written exhibits.

Additionally, neither of the district court's decision letters, although discussed by both litigants, are found in the record itself. Attachment of documents to the appellate brief does not make a proper record.

**2.** Following divorce, Newman secured restoration of her maiden name.

to show cause. This issue was terminated by stipulation in late 1984 after an active course of pleadings.

A lull in their litigation battles lasted until September 4, 1986, when Dorr filed a motion for supplemental property settlement and more defined child visitation. This new litigation resulted in a new judge being assigned to the case; and it is from his decisions that this appeal is taken. Newman responded with a petition for contempt in March 1987 as then "resolved" by order of May 14, 1987 by denial of the Dorr petition to modify with prejudice and in decision on the Newman petition and contempt proceedings involving property and support:

IT IS THEREFORE ORDERED that the Plaintiff's Motion for Supplemental Property Settlement, which this Court has considered as a petition for modification of decree, be, and the same hereby is, dismissed with prejudice.

The Defendant then presented her testimony and evidence regarding the Petition for Contempt as filed herein. The Court having considered said evidence, statement of counsel, and being otherwise fully advised in the premises, finds as follows:

1. That on February 8, 1983, this Court entered its Order incorporating into a Decree of Divorce a Property Settlement Agreement which the parties had previously negotiated and agreed upon.

2. That subsequent to the entry of the divorce, the parties entered into an agreement on October 21, 1985, introduced in this matter as a joint exhibit, which agreement provided for the quantification of certain sums as owed by the Plaintiff to the Defendant under the paragraph entitled "Office Building" of the previous Property Settlement Agreement, said sums being in the amount of $8,000 plus attorneys fees and costs in the amount of $1,500, which was due February 8, 1987.

3. In addition, pursuant to the original Property Settlement Agreement incorporated into the Decree of Divorce in this matter, the Plaintiff agreed to pay and was ordered to pay to the Defendant $17,500 plus interest at 8% from February 8, 1983, which sum was due and payable on February 8, 1987.

4. The Plaintiff has not paid the Defendant any of said sums pursuant to the previous Orders of this Court or the parties' agreement of October 21, 1985, and by reason thereof, is in contempt of the Orders of this Court.

5. By reason of the Plaintiff's contempt of the Orders of this Court, the Defendant has incurred attorneys fees in the amount of $1,659.25 which are reasonable and necessary, together with travel expenses and lost wages in the amount of $717.65, all as the result of the Plaintiff's actions.

\* \* \* \* \* \*

THEREFORE, THIS COURT DOES HEREBY ORDER, ADJUDGE AND DECREE THE FOLLOWING:

1. The Plaintiff, Mark J. Dorr, is in contempt of the previous Orders of this Court for failure to pay the Defendant the sums as owed to the Defendant, said sums being $9,500, due February 8, 1987, and the sum of $17,500 plus interest at 8% from February 8, 1983 to date of payment, none of which the Plaintiff has paid to the Defendant to date.

2. The Plaintiff may purge himself of said contempt by paying to the Defendant the sum of $9,500 within 30 days of April 15, 1987.

3. The Plaintiff shall be allowed an extension of one year or until February 8, 1988, to pay to the Defendant the sum of $17,500, together with interest at 8% from February 8, 1983, to February 8, 1987, and interest at 10% from February 8, 1987 to date of payment.

4. The Plaintiff shall immediately transfer and assign unto the Defendant all stocks and bonds to which the Defendant is entitled pursuant to the original Decree of Divorce, including without limitation, the Kee Exploration stock. Such stock shall be assigned into the name of the Defendant and into the Defendant alone.

5. If the Plaintiff shall pay to the Defendant the sum of $9,500 within 30

days as provided above, the Defendant shall bear her own attorneys fees of $1,659.25 and expenses of $717.65, provided, however, that should the Plaintiff fail to pay said sum within said 30 days, then the Plaintiff shall, together with said $9,500, pay to the Defendant said attorneys fees in the amount of $1,659.25 and expenses in the amount of $717.65.

6. The Defendant shall convey her interest in the parties' former residence to the Plaintiff, provided that the Plaintiff shall, simultaneously, grant and convey a mortgage upon said residence in favor of the Defendant and in addition secure from the Plaintiff's present wife a release of her homestead interest and such other interest as said wife may have that would be superior to or interfere with the mortgage interest of the Defendant as contemplated in the original Decree of Divorce.

**3.** It is this petition that initiated the present course of litigation. Following a hearing held August 23, 1988 and a succeeding argument held November 3, 1988, an opinion letter of November 8 and January 26, 1989 were written and an order entered on February 16, 1989 from which this appeal is taken.

The order provided:

The Court has considered all the evidence presented in this matter, statement of counsel and is fully advised as to all matters pertaining hereto, and based thereon finds as follows:

1) The Defendant, Peggy Newman (formerly Peggy Dorr), found it necessary, following the entry of the divorce in this matter, to continue her education.

2) The Defendant attended nursing school in Denver and obtained a R.N. degree.

3) The Defendant attended school under tight financial circumstances and has accumulated debt in financing her education.

4) The Plaintiff, Mark Dorr, did not pay the property settlement upon which he agreed, and, as a result, the Defendant was unable to purchase a house for herself and the parties' minor child and is still unable to secure permanent accommodations.

5) The Defendant's current income is insufficient to allow her to purchase a home.

6) The Plaintiff disposed of his interest in Dorr and Associates Accounting for no consideration but was paid upon termination a $7,500 consulting fee.

7) The Plaintiff's present wife assumed a position with the Plaintiff's old firm, now

That judicial resolution failed and Newman, having received none of the lump sum payment, by June 1987 filed a second petition for contempt. A further hearing was held without filed order in July and again without success in payment, a third application was made about a year later on July 15, 1988 by which she petitioned

this Court enter its order holding Mark Dorr in contempt for his failure to comply to with the orders of this Court, that Mark Dorr be ordered to pay Peggy Newman the sum of $500/month as maintenance and support until such time as he has paid in full all amounts owed by him as provided in this Court[ ]'s order of May 13, 1987, that he pay to Peggy Newman all attorneys fees which she has incurred in bringing this matter to the Court by this petition, and for such other and further relief as the Court may deem [j]ust and proper.[3]

known as Dorr, Keller, Bentley & Peka [sic], at a salary of $4,000 per month.

8) The Plaintiff, who is a Certified Public Accountant and former partner, is presently employed by his old firm at an annual salary of $20,000.

9) The Plaintiff, while unable to pay the Defendant the property settlement, has traveled to Las Vegas and Disneyland with the parties' minor child.

10) The Plaintiff has failed to pay or arrange for the payment of the property settlement obligations which he himself negotiated and has in the eyes of the Court made a fraudulent transfer of his accounting business without consideration in an effort to avoid payment of his property settlement obligations.

11) The Defendant requires additional alimony to pay her debts and to secure adequate housing for herself and the parties' minor child.

12) There have been substantial changes in the circumstances of the parties warranting a modification of the Decree of Divorce and increase of alimony to be paid to the Defendant.

IT IS THEREFORE ORDERED that Mark A. Dorr shall pay to Peggy J. Newman, formerly Peggy J. Dorr, the sum of Three Hundred Dollars ($300.00) per month alimony in addition to the alimony payments he is currently paying her pursuant to the Decree of Divorce entered [in] this matter on February 8, 1983, said additional alimony payments to commence on December 1, 1988, and continue on the first day of each month through January 31, 1993.

Initially, at the time of the divorce, Dorr and Newman expected to remain in a business partnership after their divorce. The effort failed to be followed by an amended arrangement mutually adopted in 1985 to liquidate their partnership and provide for Newman's assignments of the interest to Dorr and:

> The parties agree that the amounts as owed by Mark to Peggy arising out of the Decree of Divorce in Civil Action No. 12404, Campbell County, Wyoming, specifically the paragraph entitled "Office Building", shall be the sum of $8,000.00, including interest, which sum shall be due and payable as provided in the Decree of Divorce. Mark further agrees that he shall pay to Peggy, at that time, an additional $1,500.00, which sum is intended to reimburse Peggy for expenses and attorneys fees she has incurred in these matters since the Decree of Divorce was entered.

This $9,500 obligation was in addition to the original agreement and decree:

> It is the desire of the parties to assure defendant that she will have the approximate sum of Seventeen Thousand Five Hundred Dollars ($17,500.00) within four (4) years from the date of the Divorce Decree herein is entered from this property, in order that at such time as she finishes her schooling she will be in a position to purchase a home.

Consequently, a lump sum payment of $27,000 (plus interest) became due and payable

from Dorr on February 8, 1987. The divorce decree had provided for alimony during 1983 of $1,050; 1984—$1,150; 1985—$1,250; 1986—$1,350; and for the then following seventy-three successive months in a reduced amount of $350 per month. The alimony reduction was scheduled to occur when Newman finished her schooling so that "she will be in a position to purchase a home" with the property settlement payment then to be made.

Since March 1987, the district court has been faced with continued efforts by Newman to collect the unpaid attorney fees of $1,500; partnership dissolution agreement of $8,000; and the residual payment provisions of the decree of $17,500 with interest for her to have funds as originally agreed in 1983 to purchase the home for herself and Ashley. This litigative history as well as Dorr's argument about the district court's finding of fraudulent conveyance is related to the texture of the action taken by the district court. Dorr is a Certified Public Accountant (C.P.A.). Prior to April 15, 1987, he practiced in a partnership under the name of Dorr and Associates. He was "expelled" because of concern about Newman trying to collect the divorce decree indebtedness. He first worked as an independent contractor for his prior partnership at $2,500 per month, and more recently as a salaried employee at about $20,000 per year. In June 1987, his present wife, Barbara Dorr, also a C.P.A., became a partner in exchange for his relinquished

---

IT IS FURTHER ORDERED that beginning February 1, 1993 through January 31, 2003, Mark A. Dorr shall pay to Peggy J. Newman, formerly Peggy J. Dorr, the sum of Six Hundred Dollars ($600.00) per month as alimony, maintenance and support.

IT IS FURTHER ORDERED that all increase in alimony ordered to be paid by this order shall not be includable in the income of Peggy J. Newman and not be deductible by Mark A. Dorr, it being the intention of this Court *that all such payments shall be designated as alimony, maintenance and support and shall not be includable in the income of Peggy J. Newman under Section 71 of the Internal Revenue Code, and are not allowed as deductions under Section 215 of the Internal Revenue Code by Mark A. Dorr.*

IT IS FURTHER ORDERED that the petition for an order of contempt as filed by Peggy J. Newman for the failure of Mark A. Dorr to pay the sums for property settlement agreed by him and ordered by this Court on February 8, 1983, is denied, upon a finding that this court cannot enforce a property settlement through its contempt powers. The Court finds that Peggy J. Newman would have the right to reduce the property settlement to judgment and to execute on the judgment according to law.

IT IS FURTHER ORDERED that each of the parties shall pay their own attorneys fees and costs incurred by them arising out of the Petition for Order of Contempt and Enforcement of Court Order and Petition for Payment of Maintenance and Support as filed herein on or about July 14, 1988.

(Emphasis added.)

position, and the firm as first merged then continued today as Dorr, Bentley & Pecha. Barbara Dorr is paid $4,000 per month as a partner and Dorr is paid $2,000 per month as an ex-partner. Dorr's role in the accounting firm apparently did not significantly change after his expulsion as a partner and re-admission as an employee. Dorr's defensive strategy against payment pressure was well communicated and reasonably clear. He told both his ex-wife and a member of the accounting firm that he would file bankruptcy before paying his divorce settlement obligations.[4]

██ To be first determined is whether alimony in Wyoming law is subject to modification by the court following entry of the divorce decree. This issue is decided. *Yates v. Yates*, 702 P.2d 1252 (Wyo.1985); *Buchler v. Buchler*, 65 Wyo. 452, 202 P.2d 670 (1949); *Lonabaugh v. Lonabaugh*, 46 Wyo. 23, 22 P.2d 199 (1933). Those cases also establish that modification can occur even if the original arrangement was established by agreement of the parties. *Yates*, 702 P.2d 1252.

██ The basis of modification, similar to changes in child support, is a change in circumstance. *Manners v. Manners*, 706 P.2d 671 (Wyo.1985). The decision rests in the sound discretion of the court provided that a change in circumstances does exist. *Manners*, 706 P.2d at 671; *Buchler*, 202 P.2d 670; *Lonabaugh*, 22 P.2d 199. Cf. *McMillan v. McMillan*, 702 P.2d 1279 (Wyo.1985). The test for decision in alimony revision, W.S. 20–2–116, like child support, is exercised discretion of the district court and will not be disturbed on appeal absent clear abuse. *Overcast*, 780 P.2d

1371; *Blanchard v. Blanchard*, 770 P.2d 227 (Wyo.1989); *Martin v. State*, 720 P.2d 894 (Wyo.1986); *Grosskopf v. Grosskopf*, 677 P.2d 814, 820 (Wyo.1984); *Chorney v. Chorney*, 383 P.2d 859 (Wyo.1963).

██ With alimony modification proper, if appropriate, we next face three technical questions. Was that remedy properly requested? Was it justified by change of circumstance? Was it justified in the decision made? Dorr's first issue contends the prayer of the motion petition of July 15, 1988 "that Mark Dorr be ordered to pay Peggy Newman the sum of $500/month as maintenance and support" is insufficient to raise a question of increased alimony. Additionally, although a motion for leave to amend is not to be found in this record, it was addressed by the district court at the close of the hearing held on August 23, 1988:

MR. DALY: May I make the objection? I understand where the Court is coming from. I want to object to any motion to amend at this time. The motion is made after the—at the close of the case not at the close of his evidence and is improperly made at this time.

THE COURT: Go ahead. I overrule it.

Later, the district court judge said:

I am going to order alimony and I will order enough alimony that if you never pay this property settlement, if you never in your life pay it, you are still going to pay your wife because she lived with you, she had your child, you had a divorce and you made your own agreement with her. You made it yourself. Mr. Daly wasn't involved. Mr. Omohundro wasn't involved. You said I will pay you this and that I will pay you anything to

---

**4.** We do not even allude to conjectural answers about possible bankruptcy absolution of this divorce settlement obligation where it involved payment to provide a residence for ex-wife and child. This is a federal law question. *See In re Messnick*, 104 B.R. 89 (E.D.Wis.1989) and 11 U.S.C. § 523(a)(5)(B). Although the bankruptcy discharge release of a divorce decree payment obligation is a federal law question, whether the release creates a change of circumstances for state court maintenance payment obligation is a state law decision. *Low v. Low*, 777 S.W.2d 936 (Ky.1989); *In re Danley*, 14 B.R. 493 (D.N.M. 1981). An interesting result is achieved, as we

shall later relate in our conclusion that the district court was justified in finding a change of circumstances from non-compliance with the payment agreement. If this rather minimal total sum where a family with a stated income of $6,000 per month were to be resolved, it would appear that the payment might cause another change in circumstances with or without bankruptcy so that reduction of the alimony to the original amount might then also be justified for such period of time as the obligation would continue. Nothing suggests that interim alimony payments would necessarily be credited on the property settlement "debt."

get out of the marriage. And you can't live with it and you change it and make a second agreement. The Court orders you to transfer stock and you couldn't do that. You can't do anything the Court tells you to do.

We find the issue of modification of alimony properly presented by a contested issue of pleading and, when addressed in hearing evidence, sufficient for a decision on the merits. *See Lonabaugh*, 22 P.2d 199. We next consider the change of circumstance issue charging abuse of discretion in finding and correcting a detrimental change of circumstance to the ex-wife by selecting the remedy from which Dorr now appeals. *Gunter v. Gunter*, 187 Md. 228, 49 A.2d 454 (1946). We must answer the question whether a divorced person's failure to comply with part of the integrated divorce settlement constitutes a change in circumstance to the former spouse. We hold for this case that the district court was entitled to find as it did, that a change of circumstance did occur with property settlement payment refusals as it related to the scheduled decline in alimony payments. *In re Marriage of Hauger*, 679 P.2d 604 (Colo. App.1984). Continuing jurisdiction exists to enforce the expectation [5] of the original divorce decree. *Bjordahl v. Bjordahl*, 308 N.W.2d 817 (Minn.1981).

▇▇▇▇ The divorce settlement agreement and decree included funds for Newman to buy a home after she became self-supporting. Adequate alimony was built into the parties' agreement to allow Newman to complete her education. With her education and independence in place, the plan then followed with a scheduled reduction in alimony. What Newman encountered bore no resemblance to the plan when she was presented with a two-faceted problem by settlement agreement non-payment. This is an unforseen change in circumstances

from the agreement included in the original decree and subsequent modification. *O'Bymachow v. O'Bymachow*, 12 Conn. App. 113, 529 A.2d 747, *certification denied*, 205 Conn. 808, 532 A.2d 76 (1987). Although the alimony dropped from the 1986 level of $1,350 per month to $350 per month, *see Altman v. Altman*, 101 N.M. 380, 683 P.2d 62 (1984), the funds committed to her to buy the home were not paid. The change in circumstance from Dorr's failure to abide by the original settlement plan was only later corrected by the district court order providing an increase in alimony to assure an alternative solution. We determine, as in *Lonabaugh*, 22 P.2d 199, where the income for the father declined because of the national depression constituting a change in circumstances for decreased alimony, that a failure of the father to abide by a planned divorce settlement can also be a change in circumstance to be addressed by increased alimony. The bankruptcy discharge cases provide a similar answer. *Low v. Low*, 777 S.W.2d 936 (Ky.1989). Retirement can provide a basis for a converse result of payment reduction as also a change of circumstances. *McFadden v. McFadden*, 386 Pa.Super. 506, 563 A.2d 180 (1989). See also reduced income from changed employment and ex-wife's new found capacity to work constituting a material and substantial change of circumstances. *Cooper v. Cooper*, 219 Neb. 64, 361 N.W.2d 202 (1985). *Cf. Hardisty v. Hardisty*, 183 Conn. 253, 439 A.2d 307 (1981). As a result, we find not only an acceptable legal theory but also substantial evidence to sustain the change of circumstance for the district court's properly exercised discretion in the relief granted.[6] *Low*, 777 S.W.2d 936.

▇▇▇ Our last concern arises from the taxation attribution provision in the order increasing the alimony payments:

---

5. *In re Jacobs' Marriage*, 102 Cal.App.3d 990, 162 Cal.Rptr. 649 (1980); *Hester v. Hester*, 2 Cal: App.3d 1091, 82 Cal.Rptr. 811 (1969).

6. Adequacy of income to pay the additional $300 per month after the alimony decreased from $1,350 per month to $350 is simply not in issue in this record. The calculated arguments by Dorr, a Certified Public Accountant, regarding his expulsion, employment and partnership substitution does not convince this Court that the observations by the district court were erroneous. Nor do those arguments satisfy us as a matter of law that Dorr should not abide by his agreement to provide support and housing funds for his prior family.

[A]ll increase in alimony ordered to be paid by this order shall not be includable in the income of Peggy J. Newman and not be deductible by Mark A. Dorr, it being the intention of this Court that all such payments shall be designated as alimony, maintenance and support and shall not be includable in the income of Peggy J. Newman under Section 71 of the Internal Revenue Code, and are not allowed as deductions under Section 215 of the Internal Revenue Code by Mark A. Dorr.

The issue of taxability of the increased amount of alimony was not addressed by Dorr in appellate brief, although it became subject of comment and inquiry during oral argument. The federalist nature of American government renders state courts powerless to change congressional intent as defined in the Internal Revenue Code. *Schatten v. United States*, 746 F.2d 319 (6th Cir.1984). *Cf. Serrano v. Serrano*, 213 Conn. 1, 566 A.2d 413 (1989), considering decree provision allocating the statutory tax exemption.

There is a difference between the tax result directed by the district court, where the payment is designated alimony and decreed to have the tax effect it would have if it was a property settlement, and the tax result authenticated by the present provisions of 26 U.S.C. § 71, changed by the Tax Reform Act of 1984, as found in 26 U.S.C. § 71(b)(1)(B) by which discretion relating to designation whether alimony and property settlement is provided. *See* Comment, *Tax Planning in Divorce: Both Spouses Benefit From the Tax Reform Act of 1984*, 21 Willamette L.Rev. 767 (1985) for a general discussion of the flexibility afforded by the Tax Reform Act of 1984 and also Note, *Redefinition of Alimony Under the Tax Reform Act of 1984*, 35 Drake L.Rev. 187 (1985–86). We do not understand 26 U.S.C. § 71(b)(1)(C) to change the nature and effect of a payment designated as alimony under the attribution provisions of 26 U.S.C. §§ 62 and 215 which provide for the

deductibility of alimony from deferred gross income and the parallel taxable income provision of 26 U.S.C. § 71.

 Although the new law affords marital partners far greater flexibility for designation of whether an award was alimony or property settlement, it does not also provide authority to change the taxable result once the designation is made. It is the intent of the district court as determinable from the text of the entered orders which establishes taxability status. *In re McCauley*, 105 B.R. 315 (E.D.Va.1989). As applied to pre–1984 law, see *Green v. C.I.R.*, 855 F.2d 289 (6th Cir.1988); *Schatten*, 746 F.2d 319; *Hayutin v. C.I.R.*, 508 F.2d 462 (10th Cir.1974); *Mills v. C.I.R.*, 442 F.2d 1149 (10th Cir.1971); *Bardwell v. C.I.R.*, 318 F.2d 786 (10th Cir.1963). *See also Sellers v. Sellers*, 775 P.2d 1029 (Wyo. 1989), Thomas, J., concurring in part and dissenting in part. The designated alimony created by the divorce decree amendment is taxable to the recipient and deductible by the payor.[7] 26 U.S.C. §§ 71(b)(1)(C) and 215.

We generally affirm the decision of the district court, but in conformity herewith remand for deletion of the tax attribution provision.

ROONEY, J., Retired, concurred.

ROONEY, Retired Justice, concurring.

The majority of the court has here blurred the distinction between "just and equitable disposition of the property of the parties" and "alimony." The holding that failure to abide by a property disposition is a sufficient change in circumstances to warrant a modification of an alimony award is too broad. W.S. 20–2–114 provides:

"In granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits

---

**7.** The additional payment can only be considered to be alimony since the district court would have no authority to readjust property division and settlement nearly five years after

the initial divorce decree was entered. See *McMillan*, 702 P.2d 1279; *Yates*, 702 P.2d 1252; *Finkbiner v. Finkbiner*, 340 F.2d 878 (10th Cir. 1965).

of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired and the burdens imposed upon the property for the benefit of either party and children. The court may decree to either party reasonable alimony out of the estate of the other having regard for the other's ability and may order so much of the other's real estate or the rents and profits thereof as is necessary be assigned and set out to either party for life, or may decree a specific sum be paid by either party."

Obviously, whether a property settlement is just and equitable should be determined as of the *date of the decree. Kane v. Kane,* 577 P.2d 172 (Wyo.1978); *Warren v. Warren,* 361 P.2d 525 (Wyo.1961).

"As a general rule, a final judgment is conclusive both as to the relief granted and as to the relief denied or withheld, and on its entry the jurisdiction of the court over the subject matter and the parties is exhausted unless preserved in the mode authorized by statute. Hence, any further judgment or order materially varying the first judgment is a nullity, except as it is rendered pursuant to the power which the court may have in opening, modifying, or vacating its own judgments and in accord with the practice prescribed for the exercise of such power. This rule has been applied in divorce proceedings."

24 Am.Jur.2d, *Divorce and Separation,* § 426 (1983).

The doctrine of *res judicata* is to the effect that a judgment decided upon the merits by a court with jurisdiction is conclusive of that cause of action and facts or issues litigated, both as to the parties and their privies in any other action in the same or different court of concurrent jurisdiction on the same issues. *CLS v. CLJ,* 693 P.2d 774 (Wyo.1985); *Delgue v. Curutchet,* 677 P.2d 208 (Wyo.1984).

By statute, Wyoming has authorized revision and alteration of a decree for alimony. W.S. 20–2–116 provides:

"After a decree for alimony or other allowance for a party or children and after a decree for the appointment of trustees to receive and hold any property for the use of a party or children, the court may from time to time, on the petition of either of the parties, revise and alter the decree respecting the amount of the alimony or allowance or the payment thereof and respecting the appropriation and payment of the principal and income of the property so held in trust and may make any decree respecting any of the matters which the court might have made in the original action."

But the modification can be made only on the showing of changed circumstances from those at the time of the former decree. *Salmeri v. Salmeri,* 554 P.2d 1244 (Wyo.1976); *Rubeling v. Rubeling,* 406 P.2d 283 (Wyo.1965); *Lonabaugh v. Lonabaugh,* 46 Wyo. 23, 22 P.2d 199 (1933).

There is no statutory authority for modification of a divorce decree's provision concerning property settlements. To use a failure to abide by a property settlement direction of the court through adjustment of alimony sidesteps the purposes of alimony and that of property settlements, and it is an improper extension of the exception to *res judicata* as provided by W.S. 20–2–116. Property settlement provisions of a divorce decree cannot be modified. *Paul v. Paul,* 631 P.2d 1060 (Wyo.1981); *Pavlica v. Pavlica,* 587 P.2d 639 (Wyo.1978). Transferring its obligations to alimony is a modification of its provisions. The failure to abide by the property settlement directions of a court should be corrected through contempt proceedings.

However, in this case, there are sufficient grounds for modifying the alimony provisions of the decree without any reference to or consideration of the property settlement. There has been a material change in the financial position of both parties. W.S. 20–2–116; *Heyl v. Heyl,* 518 P.2d 28 (Wyo.1974); *Rubeling,* 406 P.2d 283. The changes of circumstances warranting an increase in alimony in this case are: A necessary accumulated debt by de-

fendant in securing her education; unanticipated home rental payments by defendant; plaintiff's marriage to a high income-producing person; and a change in the relative assets of the parties whereby the plaintiff's assets increased and the defendant's assets decreased.