Kenneth Allen KANE, Appellant (Defendant below),

v.

Donna J. KANE, Appellee (Plaintiff below).

No. 4813.

Supreme Court of Wyoming.

April 12, 1978.

Lawrence A. Yonkee, Redle, Yonkee & Arney, Sheridan, for appellant.

Charles F. Moses, Moses, Tolliver & Wright, Billings, Mont., and William D. Omohundro, Omohundro & O'Brien, Buffalo, for appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

McCLINTOCK, Justice.

Kenneth A. Kane, defendant below and in whose favor a decree of divorce was entered by the district court of Sheridan County, appeals from those provisions of the decree which effected a disposition of property of the parties to the divorce. Consistent with our decisions in a number of cases reviewing such decrees, and except for slight modifications as to technical form of the judgment, we shall affirm.

The plaintiff, Donna J. Kane, after 21 years of marriage to which two children were born, but whose custody or care is not involved in this appeal, sued her husband for divorce, but divorce was granted to him upon his counterclaim. Defendant was directed to pay to her the sum of $92,000 in cash and she was awarded her jewelry collection, insurance policies upon her life, an automobile and various items of personal property.

The defendant was awarded various stocks and securities, machinery, equipment and livestock, in addition to the real property owned by the parties and located in Wyoming. The defendant was required to assume certain existing and accrued liabilities and debts of the parties in addition, including the liability on the Montana property discussed below. The trial court made further division of the property as it remained. Although there is some disparity in the values of the property awarded, the amount that each received is substantially equal.[1]

The court also ordered the defendant divested of a one-half undivided interest in real estate, held in his name, located in Big Horn County, Montana, together with all oil, coal, gas and other mineral rights underlying which said interest was vested in plaintiff. The trial court then imposed a trust upon the Montana real property, appointing defendant as trustee to manage and operate it as a livestock ranch and farm, and to deliver half the net income proceeds to the plaintiff. The decree required that in the event the property was sold to a then-existing purchaser, who held an option to purchase, one half of the proceeds were to be given to Donna Kane. In

---

1. Ignoring the Montana property, and accepting valuations on the other property which do not seem to be questioned, defendant receives property of some $40,000 more value than that received by the plaintiff.

the event that option was not exercised,[2] Kenneth Kane as trustee was authorized to seek and negotiate the sale of this property, with the proceeds from the sale to be likewise divided. The tax liability in event of sale is to be shared by the parties on an equal basis.

The defendant appeals from this division of property and raises the following issues:

That the division of property is unjust and inequitable, and fails to consider the position in which the defendant will be left after the divorce;

That the trial court erred in considering the existing option to purchase on the Montana land when weighing the fairness of the settlement; and

That the district court lacked jurisdiction to directly affect title to the foreign land, and that the attempt by the trial court is void.

The trial court's personal jurisdiction over the parties and issues is not questioned.

We shall initially consider the first and second questions raised by this appeal together, and then respond to the third.

■ The defendant, in essence, questions the evidentiary support for the trial court's decision regarding the property. The rule by which such appeals are measured in Wyoming is clear. The trial court is to exercise its discretion in making a property settlement, and this discretion will not be disturbed except on clear grounds. It will only be altered in extreme cases. *Barbour v. Barbour*, Wyo., 518 P.2d 12 (1974). The applicable statute, now § 20–2–114, W.S.1977, requires the trial court, subject to the rules above, to consider the merits of the respective parties, the condition in which they will be left after division, the party who acquired the property, and the burdens imposed upon the person receiving the property. *Beckle v. Beckle*,

Wyo., 452 P.2d 205 (1969). The function of this court is not to constitute a reconsideration or retrial of the district court's decision unless the same is clearly unjust and inequitable, *Boschetto v. Boschetto*, 80 Wyo. 374, 343 P.2d 503 (1959), and *Kennedy v. Kennedy*, Wyo., 456 P.2d 243 (1969), reh. denied, but to determine from the record whether the decision of the trial court conforms to these standards.

■ *Warren v. Warren*, Wyo., 361 P.2d 525 (1961), sets out the principles by which the division of property should be made, and notes that no hard and fast rules exist regarding the division, that the statute that applies does not require an equal division, and that a just and equitable division is as likely as not to be unequal. We must add in response to the argument of the defendant, that a just and equitable settlement cannot always be equated with quantitative equality.

Defendant's argument that the division effected by the trial court leaves him in an impossible cash position is predicated on the assumption that all charges against him, as for example, an obligation to the Midland Production Credit Association in the amount of some $184,000, are immediately due and payable. This is not established by the record and it also appears that the amount of the loan was increased by $67,000 during the year 1976, a year in which defendant was not operating the ranch as such. As pointed out by plaintiff's counsel, defendant's argument also does not take into consideration a number of substantial income items received by him. Defendant's argument concerning the possibility of additional tax liability in the amount of $130,000 being imposed upon him is without merit, since the decree specifically imposes upon plaintiff an equal share of any taxes that may arise in the event the option is not exercised.

---

**2.** As pointed out by defendant in his brief, the status of this property is somewhat uncertain. Although only 80 acres of the ranch are lands in which defendant has ownership of the coal, the optionee is interested in the land as a coal property and is involved in negotiations with the Crow Indian tribe for a lease, the success of which negotiations may well offset its inclination to exercise the option of purchase.

■ The matter of the Montana ranch, the option for sale and the disposition that is to be made thereof, we think represents the crux of defendant's argument. In considering this point, we do not question the contention of the defendant that whether a property settlement is just and equitable should be determined as of the date the decree was entered, but feel compelled to note that the disposition of property of the parties is an equitable function of the court, *Storm v. Storm*, Wyo., 470 P.2d 367 (1970), and that while a mere expectancy cannot be the subject of division, a distinction can and must be made between an estate that may come into existence in the future and future benefits to be derived from an estate already in existence. Here, the Montana ranch is owned by the parties. What may happen to it in the future may be somewhat uncertain, but the trial court was required to deal with it as a presently existing and material asset of the marriage.

■ Notwithstanding the fact that the defendant had received $400,000 as consideration for an option to purchase the Montana ranch at a price in excess of $2,000,000, his principal argument in this court is that since his expert witness testified that the market value of the ranch (considered only from the standpoint of its surface uses) was some $330,000, the trial court should have accepted that appraisal and set the ranch over to him on that basis. It may be conceded that the fact that someone is willing to pay a substantial consideration for an option to purchase a property at a price far exceeding its value when viewed strictly as a ranch is not evidence of the property's true market value. However, it is likewise evident that should the option in this case be exercised or a new sale made to a purchaser similarly situated to the first optionee, a settlement of the property rights of the parties herein based on the market value fixed by an appraiser, computed without reference to the ranch's value as a mining property, would deprive the wife of

a material part of the benefit that would be derived from such a sale. Partition of the property may not be practical and might mean that neither party could successfully conduct a ranching operation but the ranch unquestionably had a potential value far in excess of its ranching capacities.[3] Under such circumstances, and seeking to assure to each of the parties an equal division of the fruits of their labors as well as the fortuitous increment in value resulting from the western coal boom, the trial court elected not to divide this property or make a forced sale from one to the other, but assured to each the realization of his or her share of the substantial profit that may result from a sale of the property. The defendant retains control of the operation of the property as a ranch and also of any sale negotiations that might ensue. Under the circumstances of this case, we deem the action of the trial court to be eminently fair.

The division of property made by the trial court, and questioned by the defendant in issues one and two, must stand, for we cannot say that the district court clearly abused its discretion, or acted in an unjust or inequitable manner.

We now come to the third issue raised by this appeal, that is, whether the district court had the power—for such is the essence of jurisdiction—to make disposition of the land of the defendant located outside the borders of Wyoming.

■ We think the issue settled, at least since *Fall v. Eastin*, 215 U.S. 1, 30 S.Ct. 3, 54 L.Ed. 65, 23 L.R.A.,N.S., 924 (1909), that the court of one state has no power to directly affect title to land located wholly within the borders of another. Decrees and judgments purporting to this effect are void, and to the extent the decree before us purports to so do it must fail. However, we consider it equally well established that a court of equity having authority to act upon the person may indirectly act upon real estate located in another state, through the

---

**3.** We note particularly that one expert testifying in behalf of the plaintiff fixed a present-day value of three to twelve million dollars. Defendant's appraiser paid no attention to mineral values.

instrumentality of its equity power over the person. *Fall v. Eastin*, supra; *Rozan v. Rozan*, 49 Cal.2d 322, 317 P.2d 11 (1957), reh. denied; *Weesner v. Weesner*, 168 Neb. 346, 95 N.W.2d 682 (1959); *McElreath v. McElreath*, 162 Tex. 190, 345 S.W.2d 722, reh. denied, (1961); 34 A.L.R.3d 962.

It is equally clear that the doctrine of the law of trusts is an equitable one, and the law of trusts an integral part of equitable jurisprudence. 4 Coke's Institutes 84 (1797); 4 Kent's Commentaries 303, (11th Ed. 1867). This is the history of the trust and the law in Wyoming. *Flohr v. Walker*, Wyo., 520 P.2d 833 (1974); *Scotti's Drive In Restaurants, Inc. v. Mile High-Dart In Corp.*, Wyo., 526 P.2d 1193 (1974); *State v. Underwood*, 54 Wyo. 1, 86 P.2d 707 (1939).

It is true that the authorities first cited did not specifically address the propriety of the equitable remedy of trust but dealt · with conveyance. This, however, should be no obstacle, as the power in personam to require conveyance and divestiture is greater than the imposition of trust, and it must be agreed that the power to do the greater includes the power to do the lesser. Both actions of equity are in personam. "The distinction is between a judgment directed against the res itself, and one directed against the person of the owner, who acts upon the res." Cardozo, J., *Deschenes v. Tallman*, 248 N.Y. 33, 161 N.E. 321 (1928), citing *Penn v. Lord Baltimore*, 1 Ves.Sr. 44 (1750). This distinction we must recognize. As Chief Justice Marshall stated in *Massie v. Watts*, 6 Cranch 148, 160, 10 U.S. 148, 3 L.Ed. 181, 186 (1810),

"Upon the authority of these cases, and of others which are to be found in the books, as well as upon general principles, this court is of opinion, that, in a case of * * * trust, * * * the jurisdiction of a court of chancery is sustainable wherever the person be found, although

lands not within the jurisdiction of that court may be affected by the decree."

In this case the trial court appears to have attempted both directly to effect legal title by divestiture and to act in equity. The former is invalid, but under the authorities we see no reason why the judgment should not properly operate upon the parties themselves. We therefore hold that portion of the decree purporting to divest title from the defendant and vest it in the plaintiff improper, but direct the modification thereof as suggested by plaintiff's counsel, that is:

That that portion of the paragraph beginning on page 2 of the decree be modified by striking the first eight lines thereof and substituting the following:

"IT IS FURTHER ORDERED that KENNETH ALLEN KANE shall be, and he hereby is, ordered to convey a one-half (½) undivided interest in the following described real property, together with all oil, coal, gas and other mineral rights underlying the same, to said DONNA J. KANE.",

and that the first paragraph beginning on page 3 of the decree be modified by striking the first two lines and substituting the following:

"IT IS FURTHER ORDERED that the parties submit their interest in the foregoing described real property to a trust as follows:"

As so modified, the decree of divorce and judgment is affirmed.