**Richard F. OVERCAST, Appellant (Defendant),**

v.

**Beth OVERCAST, Appellee (Plaintiff).**

**No. 89–131.**

Supreme Court of Wyoming.

Oct. 13, 1989.

W. Keith Goody of Goody and Lubing, Jackson, for appellant.

Phelps H. Swift, Jr. of Mullikin, Larson & Swift, Jackson, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

URBIGKIT, Justice.

Appellant Richard F. Overcast challenges his contested divorce decree contending that the business property division by required sale is inequitable and an abuse of the trial court's discretion. His former wife Beth denies that contention and requests this court award her appellate fees and costs. We affirm the trial court's decision and deny appellate legal fees.

At the outset of their divorce proceeding, both the Overcasts were employed. Richard had worked three years as a construction project manager for Lincoln Property Company, earning between $54,000 and $69,000 in each of those years. Beth had been employed as the director of the Center Street Gallery in Jackson, Wyoming for nearly a year, receiving a gross salary of

$2,000 per month. The parties' principal marital debts, other than certain minor household and medical bills, consisted of $127,426 remaining on a mortgage of the marital residence and a commercial storage unit facility near· Wilson, Wyoming and about $46,500 in principal and unpaid interest on an alleged loan from Richard's parents. Excepting various items of household personalty and vehicles, the marital estate was comprised of the following major assets:

1. A 50% partnership interest in the Center Street Gallery;

2. A promissory note in the original principal amount of $20,000 made by the Center Street Gallery to a business owned and operated by the Overcasts;

3. A note in the original principal amount of $11,000 given in exchange for the sale of real property formerly owned by the Overcasts in Pinedale, Wyoming;

4. A promissory note in the original principal amount of $89,500 made by Motels of America, Inc. in exchange for the sale of commercial property formerly owned by the Overcasts south of Jackson, Wyoming; and

5. Real property in Wilson, Wyoming consisting of 10.2 acres, the marital residence and the Riverwest Storage facility valued at $658,000.

In its decree, the trial court awarded the parties equal shares in the amounts owed on the three promissory notes. Beth also received full ownership of their combined partnership interest in the art gallery, while Richard was required to satisfy, in its entirety, any obligation owed to his parents. Additionally, the trial court required the Overcasts to sell the Wilson property and evenly split the proceeds remaining after satisfying the mortgage debt and any costs associated with closing the sale.

It is the disposition of the Wilson property that Richard challenges as an abuse of the trial court's discretion in dividing the marital estate. He contended in trial court and now for appeal that the storage rental units located on that property provide him with his only source of income, and that fairness demands the estate be divided to afford him the same opportunity as his ex-wife, who retained her employment and partnership interests in the gallery, to earn a livelihood from the marital property. He therefore claims the trial court abused its discretion by denying him the option of some kind of installment purchase of his ex-wife's interest in the Wilson property or, alternatively, a permanent arrangement of continued co-ownership.[1]

This appeal does not test equivalency in divorce property division, but rather fairness in process to achieve desired equitability. *Paul v. Paul*, 616 P.2d 707 (Wyo.1980). Our evaluation of whether the trial court's property division is, in fact, equitable must proceed from the perspective of the overall distribution of marital assets and liabilities, rather than from a narrow focus on the effects of any particular disposition. *Klatt v. Klatt*, 654 P.2d 733, 735 (Wyo.1982); *Paul*, 616 P.2d at 712. From that perspective, the trial court is afforded considerable discretion to frame a distributive scheme appropriate to the peculiar circumstances of any individual case. We therefore hesitate to disturb such a scheme absent a showing that the trial court clearly abused its discretion. *Sellers v. Sellers*, 775 P.2d 1029, 1030 (Wyo.1989); *Igo v. Igo*, 759 P.2d 1253, 1255 (Wyo.1988);

---

**1.** It is not completely clear in comparison of trial testimony and oral argument with Richard's brief what he contends the trial court should have done as a permanent resolution of the co-ownership of the Wilson property. Obviously, the choices were permanent co-ownership, installment buy-out or present buy-out. Likewise, it is apparent that if Richard is in a position to buy out in a lump sum at the present time, the appeal was unnecessary since he could have bid and purchased the property by paying half of its value as the fair market value. Un-

doubtedly, the trial court would have permitted Richard to match any bona fide purchase offer as a co-owner if he was able to meet its terms. The evidence does not reveal a present existence of cash flow which could have funded a cash buy-out loan or necessarily covered a reasonably short-term amortized payment arrangement. A subtle change in perspective seems to have occurred between trial and the filing of his appellate brief where at least in the latter regard, it is clear that "manageability" involved a possible twenty-year note.

*David v. David,* 724 P.2d 1141, 1142–43 (Wyo.1986). To constitute an abuse of that discretion, the trial court's distribution of the marital property must shock the conscience and appear so unfair and inequitable that reasonable persons could not abide it. *Grosskopf v. Grosskopf,* 677 P.2d 814, 820 (Wyo.1984); *Klatt,* 654 P.2d at 735–36. A property division must be based on objective criteria and be neither arbitrary nor capricious. *Sellers,* 775 P.2d at 1032. Foremost among such "objective criteria" are those enumerated statutorily in the following manner:

> In granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits of the parties and *the condition in which they will be left by the divorce,* the party through whom the property was acquired and the *burdens imposed upon the property for the benefit of either party and children.*

W.S. 20–2–114 (emphasis added). It is fundamental that on appeal, this court does not substitute its factual decision for the decision of the trial court with review limited to assessment of exercised discretion which is particularly general in marital property division. *Broadhead v. Broadhead,* 737 P.2d 731 (Wyo.1987); *Kane v. Kane,* 577 P.2d 172 (1978), *aff'd* 616 P.2d 780 (Wyo.1980).

 In the present case, Richard singles out but one of those criteria to support his argument. That is, he asserts the property division effected by the divorce decree will leave him without a means to support himself. He also asserts he can no longer work in the construction business and the storage business which he counted on to provide for his support would be, if sold, no longer available. The record does not support his assertions. The record indicates, instead, that Richard is fifty-two-years old with considerable experience in the construction industry and that he quit his latest, highly paid job as a project manager shortly before trial for personal reasons. Additionally, he presented no evidence that he could not become similarly employed in the future. His claims to the contrary are supported by nothing more than his own speculative and questionable conclusions.

Richard's claim that the storage business could provide sufficient income both to support him and to permit him to contemporaneously purchase his ex-wife's interest in the property is, likewise, controverted. He presented no evidence that he could obtain the financing for such a buy-out based solely on the income derived from the storage business. To the contrary, his own testimony indicates the business could not support any further debt. After deducting mortgage payments and ordinary business expenses from the gross income produced by the business, but without consideration of the debt to Richard's parents which is allegedly chargeable to the business, Richard's calculations indicate a positive cash flow of only $700 per month.

Supplementing these unsupported arguments, Richard suggested at trial that it would be unwise to sell the Wilson property at that time due to a potential $86,000 tax burden on the sale. In support of that suggestion, he introduced testimony hypothesizing that, if the proposed sale was postponed for at least three years, to when he reached the age of fifty-five, the parties could apply against that tax burden both a $42,000 once-in-a-lifetime exclusion and a carryover deduction of approximately $6,000 for a pre-existing capital loss. He claimed, therefore, that it would not be in the best interests of either party to order an immediate sale.

Notwithstanding that Richard's contemplation of the benefits of a postponed sale belies his asserted motive for seeking sole ownership of the property, we do not think that his claim in this regard requires disposition of the property by any means other than that ordered by the trial court. As the record here indicates, the potential tax benefits were largely dependent upon the outcome of an Internal Revenue Service evaluation of the status of the carryover deduction and upon whether changes in the treatment of capital gains, then contemplated by Congress, would occur by the time of the sale. Had Richard been permitted to buy out his ex-wife's interest, fair-

ness would have demanded that she share the benefits of any future deductions, no matter how tenuous they then appeared. To achieve such a result would have required the trial court to engage in pure speculation both as to the existence and the amount of those benefits. On the other hand, had the trial court postponed the sale of the property in the interest of certainty, it would necessarily have had to make some provision for the parties to share the proceeds of the business in the interim. The record in this case indicates that any orderly disposition of such proceeds would be unlikely without constant supervision by the trial court. Even if that were not the case, the trial court would have been required to gamble on the continuation of a strong property market in Jackson and that the delay would not, therefore, adversely affect the market value of the property. Stargazing is not a proper requisite of the trial court's discretionary authority. *Broadhead*, 737 P.2d 731; *Kane*, 577 P.2d 172.

Neither would it be proper to require the trial court, in the exercise of its discretion, to needlessly postpone the severance presumably desired by divorcing parties. If the sale of the Overcasts' property were to be delayed, both the postponed sale and the division of interim profits would stand in the way of that severance. Alternatively, Richard's failure to establish his ability to obtain financing for a cash buy-out suggests that, if he were permitted to retain the property, the parties would be similarly restrained from such severance by some sort of installment purchase plan. We have noted that a divorce, insofar as it is possible, should sever the parties' ties and permit them to start their separate lives anew. *Sellers*, 775 P.2d at 1032. A trial court should, therefore, bear in mind that those parties are best served if the decree is as complete and as determinative as possible and if, in crafting a property division, the trial court has avoided such remedies as force a continued relation between the estranged couple. *Broadhead*, 737 P.2d at 738–39. We also note the observations of one commentator on this issue:

As a general rule, courts attempt to divide the property in such a manner as to avoid continued litigation over it and on-going financial interaction between the parties. Tenancies in common are acceptable only in exceptional circumstances. The reasons for this are both social and economic. The goal of the divorce court is to put the bitterness of marriage at an end, at least in terms of further litigation. In addition, it is generally in the financial interests of the parties to separate them in the management of income-producing properties. It makes no business sense to endanger the operation of such assets simply in order to give both spouses an ownership interest.

L. Golden, *Equitable Distribution of Property* § 8.08 at 248 (1983) (footnotes omitted). *See also Horel v. Horel*, 260 Wis. 336, 50 N.W.2d 673 (1952) and 2 W. Nelson, *Divorce and Annulment* § 14.138 at 190 (2d ed.1961). While none of the alternatives offered by Richard to the trial court's treatment of the Wilson property entail any permanent co-ownership of the property, they all require potentially acrimonious financial interactions between the Overcasts. Co-ownership for any period of time may be neither practical nor equitable. *Horel*, 50 N.W.2d 673. The likelihood of continued disagreement between the parties and the possibility of eventual detriment to the value of the property cautions us against any appellate action limiting the discretion of the trial court which might require action to postpone in any manner the division of this property. In present consideration, we only assess abuse of discretion. *Goss v. Goss*, 780 P.2d 306 (Wyo. 1989); *Klatt*, 654 P.2d 733.

The trial court's solution is consistent with this conclusion and altogether reasonable within both the facts of this case and our relevant precedent. In finding the trial

court did not abuse its discretion, we affirm. At the same time, we decline to find unreasonable cause for the appeal which would be required in order to justify the award of attorney's fees under W.R.A.P. 10.05.

Affirmed; regular costs awarded; attorney's fees for appeal denied.