2003 WY 16

**Jerald R. BREITENSTINE,**
**Appellant (Defendant),**

v.

**Nancy L. BREITENSTINE,**
**Appellee (Plaintiff).**

**No. 02–15.**

Supreme Court of Wyoming.

Jan. 30, 2003.

Andrea L. Richard of Rothgerber, Johnson & Lyons, LLP, Cheyenne, WY; and Christopher H. Hawks of Hawks & Levy, LLC, Jackson, WY, Representing Appellant. Argument by Ms. Richard.

W. Keith Goody of Jackson, WY, Representing Appellee. Argument by Mr. Goody.

Before HILL, C.J., and GOLDEN, LEHMAN,* KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶ 1] Jerald Breitenstine (Husband) appeals the property division ordered by the district court in conjunction with his divorce. Husband claims the district court erred in its division of the marital estate between him and Nancy Breitenstine (Wife). We find the trial court did not abuse its discretion and, therefore, affirm with modification.

### ISSUES

[¶ 2] Husband presents and we consider the following three issues on appeal:

I. The trial court abused its discretion by disregarding the evidence that gifts and inheritance from Mr. Breitenstine's parents to Mr. Breitenstine accounted for substantially all of the assets at issue, and erred by including Mr. Breitenstine's inherited assets in the marital estate and awarding the bulk of Mr. Breitenstine's inherited assets to Ms. Breitenstine.

II. The trial court attempted to punish Mr. Breitenstine by awarding substantially all of Mr. Breitenstine's inherited assets to Ms. Breitenstine and in doing so, issued erroneous findings of fact that are not supported by the record.

III. The trial court attempted to punish Mr. Breitenstine by exceeding its jurisdiction and ordering territories outside the state of Wyoming to take action with respect to Mr. Breitenstine's assets.

### FACTS

[¶ 3] Husband and Wife married on June 30, 1979, in Canton, Ohio. During the course of their marriage the couple had two children. Early in the marriage, Wife attended college full time and worked. Husband worked intermittently at a landfill operated by Breitenstine Landfill, Inc. Wife's earnings supported the family during that time. Husband's parents initially owned all stock in Breitenstine Landfill, Inc. Husband received shares of stock in the early part of the marriage; this stock represented twenty-one percent of the outstanding stock. In 1989, Breitenstine Landfill, Inc. sold for about $30 million. The sale took place as one transaction but it involved three parts: 1) the sale of the actual land on which the landfill was situated, 2) the sale of the corporation itself, and 3) the sale of the farm adjacent to the landfill owned by Husband and his father. The sale was structured in a manner so that Husband and his father received the money from the sale of the farm, each owner received compensation for their outstanding shares of stock, and Husband's parents received the proceeds from the sale of the landfill itself. Husband's portion of the sale proceeds amounted to $106,550.

[¶ 4] However, as was contemplated by the parties when structuring the sale, that same year Husband received a gift from his father in the amount of $1.9 million and a gift from his mother in an identical amount. Husband placed the money from these gifts into Husband and Wife's joint account. Both parties had access to the joint account and used the funds in the account of their own free will. The money was co-mingled with other marital property, and thereafter the couple lived off these funds or the income from investments purchased with these funds. After the receipt of these funds, in an effort to minimize taxes, Husband wanted to move offshore. The couple moved to the Bahamas in 1989. Husband's father died in 1994, and around that time the marriage began to have trouble. In 1994, Wife went on a hunting trip with her brother to Jackson Hole, Wyoming. She liked the area and, after discussions with Husband, both decided that a home should be purchased in Wyoming. After remodeling and renovation, the home cost approximately $2.2 million, a substantial portion of which was paid for out of the joint account. Shortly after this purchase, the marriage began to further deteriorate. The parties separated for a short time but then reconciled in March of 1995.

[¶ 5] In April of 1995, Husband received another sum of money from his mother which the parties stipulated was inheritance from his father's estate. This sum amounted to

---

* Chief Justice at time of oral argument.

approximately $4 million. In November of 1995, Husband created the Breitenstine Family Trust (family trust) and transferred a substantial portion of the marital assets to the trust. In November of 1996, the couple separated again, and Wife filed for divorce. However, Wife dismissed the divorce at Husband's request with the promise of marriage counseling. Nevertheless, in April of 1997 the couple separated for the final time. During the time between the creation of the family trust and the hearing for division of marital property, Husband continued to make transfers of property to the family trust.

[¶ 6] Wife filed for divorce in Wyoming, and the divorce was granted February 16, 1999. Yet, the property division matters were not heard until January 29, 2001. On August 17, 2001, the district court entered findings of fact, conclusions of law, and judgment related to the property division matters. The district court's findings concluded in relevant part that the total marital estate was at least $8,764,673, made up almost entirely of the gifts from Husband's parents. The judgment awarded Wife $2,000 per month in alimony and one-half of the marital estate. Husband appeals this judgment.

### STANDARD OF REVIEW

[¶ 7] Decisions concerning the division of marital property are within the sound discretion of the trial court. The disposition of marital property will not be disturbed on appeal unless there was an abuse of discretion. *Hall v. Hall,* 2002 WY 30, ¶ 12, 40 P.3d 1228 ¶ 12 (Wyo.2002) (citing *Davis v. Davis,* 980 P.2d 322, 323 (Wyo. 1999)). Property divisions are complex and therefore require the trial court, in its discretion, to assess what is right under the circumstances considering the respective merits and needs of the parties. *McCulloh v. Drake,* 2001 WY 56, ¶ 15, 24 P.3d 1162, ¶ 15 (Wyo.2001) (citing *France v. France,* 902 P.2d 701, 703 (Wyo.1995); *Neuman v. Neuman,* 842 P.2d 575, 578 (Wyo.1992); *Kennedy v. Kennedy,* 456 P.2d 243, 247 (Wyo.1969)). "An abuse of discretion occurs when the property disposition shocks the conscience of this court and appears so unfair and inequitable that reasonable people cannot abide it."

*Hall,* at ¶ 12. In our review, we consider only the evidence of the prevailing party, granting the prevailing party every reasonable inference to be drawn from the evidence. We omit from consideration evidence presented by the unsuccessful party. *Johnson v. Johnson,* 11 P.3d 948, 950 (Wyo.2000) (citing *Bailey v. Bailey,* 954 P.2d 962, 965 (Wyo.1998); *Grosskopf v. Grosskopf,* 677 P.2d 814, 818 (Wyo.1984)).

### DISCUSSION

#### Inherited Assets

[¶ 8] Husband claims the trial court erred in the division of the Breitenstine marital property. He contends that the gifts and inheritance from his parents should not have been awarded to Wife. Husband argues that in dividing the marital estate the trial court ignored a material factor deserving significant weight, i.e., the party through whom the property was acquired. Citing *McCulloh v. Drake,* ¶ 15, Husband further asserts "in Wyoming, property inherited or gifted to one spouse is awarded to the spouse who received it." We disagree.

[¶ 9] The division of marital property is controlled by Wyo. Stat. Ann. § 20–2–114 (LexisNexis 2001):

In granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired and the burdens imposed upon the property for the benefit of either party and children.

A reading of the statute indicates that the party through whom the property was acquired is *one* of the multiple factors the trial court considers in determining the appropriate division of property. In *McCulloh,* we made it clear that property inherited by one party *can* be awarded to the party by whom it was inherited or given. *McCulloh,* at ¶ 15. But we did not hold that property inherited by one spouse must always be awarded to the spouse that received it. Before the *McCulloh* decision, we said no hard and fast

rules govern property divisions. *Moore v. Moore,* 809 P.2d 261, 265 (Wyo.1991) (citing *Dennis v. Dennis,* 675 P.2d 265 (Wyo.1984); *Klatt v. Klatt,* 654 P.2d 733 (Wyo.1982); *Paul v. Paul,* 616 P.2d 707 (Wyo.1980)). We continue to adhere to that principle. We have never established bright line rules for the disposition of a gift or inheritance, and we do not do so now. Instead, we review whether the trial court considered the appropriate factors in making the disposition. The particular circumstances of the case dictate the property distribution. *Bricker v. Bricker,* 877 P.2d 747, 750 (Wyo.1994) (citing *Biggerstaff v. Biggerstaff,* 443 P.2d 524, 526 (Wyo. 1968)).

[¶ 10] In its findings of fact, the trial court stated "[t]he gifts from the Defendant's parents and the proceeds therefrom account for substantially all of the marital estate subject to division by this Court." Clearly, this statement indicates the district court considered through whom the property was acquired. Nothing in the statute or our case law would then require the district court to award this entire amount to Husband. The district court also has to weigh other appropriate factors.

[¶ 11] For instance, consideration must be given to the respective merits of the parties. The district court's findings of fact, all of which are supported by the record, include consideration of this factor. The district court found that Husband was able to account for $11,092,316 of income into the marital estate and only $3,545,048.78 in disbursements. Yet, Husband claimed he was worth only $1.5 million. Because Husband offered no evidence to account for where all the assets went, the judge was free to conclude that he still had them. During the course of the marriage, the couple created a trust account for each child (children's trusts) with a $500,000 initial deposit for each trust. Husband regularly withdrew money from the children's trusts and converted at least a portion of the funds to his own use necessitating his removal as trustee. Husband took substantial steps to secrete his assets in protection trusts and various corporations. Husband never produced a proper accounting of these trusts and corporations. In-

stead, Husband left the district court to guess at their purpose and value.

[¶ 12] Furthermore, Wife gave up work and moved to the Bahamas to help Husband avoid taxes. This can be said to contribute to the value of the assets. For a time, the move to the Bahamas made home schooling necessary, and Wife took care of those duties. For tax minimization reasons, the couple returned to Ohio on only a limited basis. Wife assisted in this strategy by staying offshore away from family and friends. The couple also invested together; they used his name, her name, both names, and the kids' names. For all intents and purposes the money was treated as marital property once it was received.

[¶ 13] The district court also considered the conditions in which the parties may be left after the divorce. As the district court recognized and the record reveals, the couple had little property that was not either inherited or gifted assets or purchased with such assets. This was due in part to the fact that immediately after the sale of the landfill both Husband and Wife stopped working and decided to live on the sale proceeds and income from investments made with the proceeds. Under the circumstances, the district court could reasonably conclude that Wife should not be left without any property. Likewise, Wife resumed teaching after the separation, but she and the children now live in a diminished lifestyle. Husband, on the other hand, is unemployed and still enjoys his considerable wealth.

[¶ 14] Additionally, Wife was awarded custody of the children. Up until the point of the property division, Husband had not paid any child or spousal support though ordered to do so. The district court was well within its discretion to contemplate Husband's reluctance to pay alimony and child support in the past and burden the assets for the benefit of Wife and the children. We find, therefore, that the court considered and weighed all the appropriate factors.

[¶ 15] Furthermore, we disagree with Husband's assertion that Wife received all of the marital assets. Wife was awarded one-half of the marital estate. The district court's judgment did order assignment to

Wife of all the property and assets of Husband, but read fully, such assignment was only to the extent necessary to satisfy the judgment, provide for alimony, and provide for child support. Once the judgment and orders of the court are complied with, Wife has no claim to Husband's remaining assets. The district court's action was to aid in collection, which is entirely appropriate given Husband's lack of compliance up until that point. Likewise, we consider that a portion of Wife's share of the marital estate included the property in Jackson. Based on the purchase price and renovation costs, the district court therefore deducted $2 million from the amount Husband owed Wife. However, some testimony indicated that this property was only worth $950,000. Should the $950,000 valuation turn out to be accurate, Wife will actually receive less than one-half of the estate.

[¶ 16] Considering the above-mentioned facts, nothing in the property distribution of this case shocks the conscience of the court. As such, we do not find the division to be unjust or inequitable. The district court considered the appropriate criteria and did not therefore abuse its discretion.

### Intent to Punish

[¶ 17] Husband contends that the trial court attempted to punish him by awarding substantially all of his inherited assets to Wife. He claims that in order to accomplish this end, the trial court issued erroneous findings of fact that are not supported by the record. We have stated that when making a property division, the trial court in its discretion may consider the fault of the respective parties, but the division must not be done with the intent to punish one of the parties. *Carlton v. Carlton*, 997 P.2d 1028, 1034 (Wyo.2000). Accordingly, "[f]indings of fact not supported by the evidence, contrary to the evidence, or against the great weight of evidence cannot be sustained." *Id.* (citing *Jones v. Jones*, 858 P.2d 289, 291 (Wyo.1993)). Generally, evidence of an intent to punish a party can be found in an unjust or inequitable property division. *Beckle v. Beckle*, 452 P.2d 205, 208 (Wyo. 1969). As noted above, we do not find the

award to be unjust or inequitable. However, because Husband asserts the district court made erroneous and unsupported findings of fact in an attempt to punish him, the issue bears further analysis.

[¶ 18] The particular finding of fact that Husband takes issue with states: "The [family] Trust was created for the sole purpose of defrauding the defendant's creditors and potential creditors, including the plaintiff, Nancy L. Breitenstine." In determining whether such a finding is erroneous, we begin our analysis by considering the Uniform Fraudulent Conveyance Act as expressed in Wyo. Stat. Ann. § 34-14-108. "Every conveyance made and every obligation incurred with *actual intent,* as distinguished from intent presumed in law, to *hinder, delay, or defraud* either present or future creditors, *is fraudulent* as to both present and future creditors." (emphasis added). Our case law indicates that an intent to hinder or delay creditors is enough to consider the conveyance fraudulent even if there was no actual fraud. *Matter of Estate of Reed,* 566 P.2d 587, 590 (Wyo.1977). The determining factor in this instance is Husband's intent when transferring marital assets to the trust. If Husband transferred the assets to the family trust with the intent to hinder, delay, or defraud either his present or future creditors, then such a transfer is fraudulent.

[¶ 19] A fraudulent conveyance is by its very nature hard to substantiate. Considering § 34-14-108, much of the difficulty stems from the virtual impossibility of proving actual fraudulent intent. In response to the difficulty, this court and other courts have come to rely on inferences and presumptions drawn from the surrounding circumstances. We have stated: "It is not necessary to prove a fraudulent conveyance by direct evidence, circumstantial evidence being sufficient." *Reed,* 566 P.2d at 591. "The only way of determining actual intent to hinder or delay creditors is by a consideration of the circumstances surrounding the transaction." *Smith, Keller & Assoc. v. Dorr & Assoc.,* 875 P.2d 1258, 1269 (Wyo.1994) (quoting *Matter of Estate of Reed,* 566 P.2d at 591). Circumstantial evidence of intent in these cases also often takes the form of

certain badges of fraud. We have defined badges of fraud as "a fact tending to throw suspicion upon the questioned transaction, excites distrust as to bona fides, raises an inference that a conveyance is fraudulent and by its presence usually requires a showing of good faith." *Reed,* 566 P.2d at 589.

[¶ 20] In *Reed,* we enumerated several "badges of fraud" including transfers of property without consideration, hurried transaction not in the normal course of business, the conveyance occurs after notice of pending action, and the relationship between the parties to the conveyance. *Id.* at 590. The badges of fraud now recognized by courts have grown too numerous to completely list. However, the more common badges of fraud include: lack or inadequacy of consideration, close familial relationship or friendship among the parties, retention of possession or benefit of the property transferred, the financial condition of the transferor both before and after the transfer, the chronology of events surrounding the transfer, the transfer takes place during the pendency or threat of litigations, and hurried or secret transactions. *See Walsh v. Walsh,* 841 P.2d 831, 839 (Wyo.1992); *Consumers United Ins. Co. v. Smith,* 644 A.2d 1328 (D.C. 1994); *Diss v. Agri Bus. Int'l,* 670 N.E.2d 97 (Ind.Ct.App.1996); *Berger v. Hi–Gear Tire & Auto Supply Inc.,* 257 Md. 470, 263 A.2d 507 (1970); *Coleman–Nichols v. Tixon Corp.,* 203 Mich.App. 645, 513 N.W.2d 441 (1994); *Jones v. Arnold,* 272 Mont. 317, 900 P.2d 917 (1995). Even though the catalog of badges of fraud is lengthy, a single badge of fraud may stamp a transaction fraudulent. *Reed,* 566 P.2d at 589. Because it is impossible to look into Husband's mind to determine his actual intent, we consider the surrounding circumstances and the family trust itself.

[¶ 21] The trial court found that the family trust was an asset protection trust. A special expert was appointed by the court to review the family trust and present testimony. The special expert intimated that because the family trust was located in the Commonwealth of the Bahamas the family trust would be considered an offshore asset protection trust (OAPT).[1] We agree. We would note that many badges of fraud can be found in the very form of the family trust. Even though OAPTs themselves are legal, we must consider the purpose for which the assets were transferred to the family trust. If the sole purpose of the transfer was to place assets beyond the reach of present or future creditors, we consider this an "intent to hinder or delay" under the fraudulent conveyance act. While there are surely some legitimate reasons for establishing OAPTs, such as estate planning or tax planning, the exclusive intent to hinder creditors is not such a legitimate reason.

[¶ 22] Considering, as the district court did, the family trust itself and the circumstances surrounding the establishment of the family trust, we see many badges of fraud. The transfer to the family trust named the children as beneficiaries. Certainly this would be a close familial relationship. Furthermore, although the family trust names the children as beneficiaries, Husband receives the benefit from the family trust. Looking at the overall scheme of the family trust, the children get no benefit because the income is accumulated and the family trust ends in 2005 at which time the assets will be returned to Husband. Husband would not even have to wait until 2005 to realize income from the trust as the family trust allows Husband himself to become a beneficiary.

[¶ 23] Further, Husband has retained the possession or benefit of the property transferred. The family trust assets are entirely within Husband's control, which is why he is being taxed on the income to the family trust, and the family trust assets would be included in his estate should he die. Hus-

---

1. We have not previously addressed OAPTs but other courts have. Generally, OAPT's are trusts established in a foreign jurisdiction to protect assets from creditors without requiring the settlor to lose control over the assets. See *S.E.C. v. Brennan,* 230 F.3d 65 (2nd Cir.2000); *FTC v. Affordable Media, LLC,* 179 F.3d 1228 (9th Cir. 1999). Because it is outside the scope of this opinion to discuss the merits of OAPTs, we decline to do so. However, the characteristics of and the motives for establishing such trusts are known to us. While such trusts may have benefits in asset protection, the use of such trusts to avoid alimony, child support, and a fair division of marital property upon divorce is reprehensible to us.

band has named a "protector"[2] over the trust assets who is a long-time friend of Husband's who even Husband agreed would act in Husband's best interests not necessarily the children's. For all practical purposes, Husband has given the assets to himself with the benefit of a spendthrift provision.

[¶ 24] Moreover, the timing of the family trust is suspicious. Only after the first separation and the subsequent reconciliation did Husband decide to make the family trust. Clearly, Husband was on notice of threatened litigation as the couple had separated for a time before he created the family trust. Husband created the family trust in secret and then continued to transfer assets to the family trust up until the property division hearing. The district court also heard evidence of other transfers Husband made into corporations to protect his assets. Husband's own accountant agreed such steps were taken solely for asset protection from creditors. The special expert stated that the purpose of the family trust was to protect the assets from Husband's creditors, perhaps including Wife.

[¶ 25] The district court has discretion to weigh the evidence and the credibility of the witnesses. The district court clearly recognized the multiple badges of fraud accompanying the transfers to the family trust and determined Husband's actual intent in making such transfers was simply to hinder, delay, or defraud Husband's creditors including Wife. Reviewing the record as discussed above, we cannot say these findings of fact are erroneous.

### Jurisdiction over the Property

[¶ 26] Lastly, Husband claims that, in an effort to punish him, the district court exceeded its jurisdiction by ordering territories outside Wyoming to take action on assets held by Husband. We have said:

> We think the issue settled, at least since *Fall v. Eastin,* 215 U.S. 1, 30 S.Ct. 3, 54 L.Ed. 65 (1909), 23 L.R.A., N.S., 924 that the court of one state has no power to

directly affect title to land located wholly within the borders of another. Decrees and judgments purporting to this effect are void, and to the extent the decree before us purports to so do it must fail. However, we consider it equally well established that a court of equity having authority to act upon the person may indirectly act upon real estate located in another state, through the instrumentality of its equity power over the person. *Fall v. Eastin,* supra; *Rozan v. Rozan,* 49 Cal.2d 322, 317 P.2d 11 (1957), reh. denied; *Weesner v. Weesner,* 168 Neb. 346, 95 N.W.2d 682 (1959); *McElreath v. McElreath,* 162 Tex. 190, 345 S.W.2d 722, reh. denied (1961); 34 A.L.R.3d 962.

*Kane v. Kane,* 577 P.2d 172, 175–76 (Wyo. 1978). One equitable function of the court is the disposition of property. When the court has jurisdiction over the parties in a divorce action, the court has the power to settle property matters even if the property is not located in the jurisdiction. *Id.* We distinguish between a judgment directed at the property itself and one directed against the owner of the property. *Id.* at 176. The district court's judgment does appear to attempt to direct judgment on both the property itself and the owner of the property. The former cannot stand, but the later can. *Id.* We, therefore, recognize that the judgment can properly operate upon Husband himself with modification and direct such modification to strike the improper portions. The judgment ordered by the district court reads as follows:

3. All property and assets of the defendant, or under the control of the defendant, of whatsoever kind or description, whether real, personal, or mixed, and wheresoever situate, whether within the State of Wyoming or without the State of Wyoming, should be frozen forthwith; and the defendant and all other persons or entities, of whatsoever kind or description, and wheresoever located or resident,

---

2. The "protector" of an offshore asset protection trust generally oversees the trustee's actions and can consent or veto those actions at the protector's discretion. The protector also generally has

the power to remove the trustee. See *FTC v. Affordable Media,* LLC, 179 F.3d 1228, 1242 (9th Cir.1999).

should be, and hereby are, ordered to take no action of whatsoever kind which might have the effect of removing any such asset from the jurisdiction of any court of any state or territory of the United States or from the jurisdiction of any of the Courts of the United States.

4. All property and assets of the defendant, of whatsoever kind or description, or under the control of the defendant, whether real, personal, or mixed, or under the control of the defendant, whether real, personal, or mixed, [sic] and wheresoever situate, whether within the State of Wyoming or without the State of Wyoming, are hereby assigned to the plaintiff as her sole and separate property, to the extent necessary to satisfy the judgment hereby awarded in favor of the defendant, provide for the alimony payments herein ordered, provide for the child support payments herein ordered, or to comply otherwise with the orders of this Court.

The above-mentioned paragraphs should be modified to read as follows:

3. The defendant should be, and hereby is, ordered to take no action of whatsoever kind which might have the effect of removing any asset under the control of the defendant from the jurisdiction of any court of any state or territory of the United States or from the jurisdiction of any of the Courts of the United States.

4. The defendant is directed to assign property within his control to the plaintiff as her sole and separate property, to the extent necessary to satisfy the judgment hereby awarded in favor of the plaintiff, provide for the alimony payments herein ordered, provide for the child support payments herein ordered, or to comply otherwise with the orders of this Court.

## CONCLUSION

[¶ 27] Husband has not shown the district court abused its discretion in its division of marital property. Therefore, the judgment of the district court is affirmed with modification consistent with this opinion.