2006 WY 48

Jerald R. BREITENSTINE, Appellant (Defendant),

v.

Nancy L. BREITENSTINE, Appellee (Plaintiff).

No. 05–186.

Supreme Court of Wyoming.

April 19, 2006.

Representing Appellant: David G. Lewis of Jackson, Wyoming.

Representing Appellee: W. Keith Goody of Alpine, Wyoming.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

VOIGT, Justice.

[¶ 1] In 2001, the district court decided several issues in the divorce action between Jerald Breitenstine (Husband) and Nancy Breitenstine (Wife), and ultimately entered a judgment. In 2005, the district court awarded Wife $196,930.17 pursuant to Wyo. Stat. Ann. § 20–2–111 (LexisNexis 2005) for the attorney's fees and costs Wife incurred while attempting to enforce the judgment against Husband. Husband now appeals the district court's decision, claiming that the statute did not authorize the district court to award Wife such fees and costs and that most of the fees and costs were unreasonable. We affirm.

## ISSUES

[¶ 2] 1. Whether the district court had the authority, pursuant to Wyo. Stat. Ann. § 20–2–111, to award Wife attorney's fees and costs in the instant case?

2. Whether Husband has established that the district court abused its discretion in finding that such fees and costs were reasonable?

## FACTS

[¶ 3] The parties were divorced in February 1999. The district court entered findings of fact, conclusions of law, and a judgment (collectively "the judgment") concerning custody of the parties' two children, child support, alimony, and the equitable division of the marital estate in August 2001. More particularly, the district court: 1) granted Wife custody of both children; 2) ordered Husband to pay back child support ($39,-021.25 plus interest) and future child support ($3,000 per month); 3) ordered Husband to provide (or reimburse Wife for) the children's medical insurance and to pay all uncovered medical costs; 4) awarded Wife back alimony ($204,000 plus interest) and future alimony ($2,000 per month); and 5) determined that the marital estate was "at least" $8,764,673 [1]—the district court awarded Wife one-half of that estate ($4,382,233) and then reduced that amount by the value of Wife's residence ($2,000,000), leaving a balance of $2,382,233 (plus interest). Each party was to pay his or her respective attorney's fees and costs, except that the district court ordered Husband to reimburse Wife for half of a court-appointed expert's fees.

---

1. For a detailed account of the manner in which the parties accumulated the marital estate, see *Breitenstine v. Breitenstine*, 2003 WY 16, ¶¶ 3–6, 62 P.3d 587, 589–90 (Wyo.2003).

[¶ 4] In its findings, the district court emphasized Husband's fraudulent conduct leading up to the divorce proceedings and clearly anticipated that Wife would experience difficulty in collecting the amounts Husband owed pursuant to the judgment. The district court concluded that Husband had "taken substantial steps to secrete ... assets [2] beyond the jurisdiction of [the district court] and the courts of the United States of America," including transferring "substantial" assets to asset protection trusts and other entities in the Bahamas. The "sole purpose" of these asset transfers was to defraud Husband's "creditors and potential creditors, including [Wife]" and Husband retained dominion and control over the assets he transferred. The district court ordered Husband to repatriate assets, to return the money he fraudulently took from his children's trusts (plus interest), and to assign property within his control to Wife to the "extent necessary to satisfy the judgment." Wife was also awarded some stock to assist her in collecting "the amounts due"; if the stock ever produced "something of value," Husband could petition the court for a credit.

[¶ 5] Husband appealed the district court's marital property division. We concluded that the district court did not abuse its discretion in dividing such property, but modified the district court's judgment in one respect. *See Breitenstine v. Breitenstine*, 2003 WY 16, ¶¶ 1, 26–27, 62 P.3d 587, 589, 594–95 (Wyo.2003). We also determined that the district court's findings on the fraudulent nature of Husband's conduct leading up to the divorce proceedings were supported by the record, and noted that ordering Husband to assign assets to Wife "was to aid in collection, which is entirely appropriate given Husband's lack of compliance up until that point." *Id.*, ¶¶ 5, 11, 15, 18–25, 62 P.3d at 589–94.

[¶ 6] Husband's lack of compliance continued long after the district court entered the judgment in this case. In December 2001, it appears that the district court held

Husband in civil contempt for failing to comply with the judgment and sanctioned Husband $73,000 (plus interest). In February 2003, Wife sought to present the district court an accounting of "money that [she had] collected against the judgment" and to have the district court determine the balance Husband owed her pursuant to the judgment. The district court held a hearing and concluded that Husband had not paid certain amounts for child support, alimony, the children's health insurance and uncovered medical costs, the money necessary to reimburse the children's trusts, the expert's fees, and the aforementioned contempt sanction. The district court also found that Husband's failure to comply with its orders "forced [Wife] to retain legal counsel in both this country and in the [Bahamas] and [she] has incurred in excess of $241,000 in attorney's fees in an attempt to recover the amounts due." Wife recovered $803,756.55 and a $550,000 Florida condominium "through these efforts," for which Husband received credit against the judgment. The district court ultimately ordered Husband to pay Wife $2,419,658.97 and awarded her $241,000 in attorney's fees. It does not appear that Husband appealed the district court's order.

[¶ 7] In October 2003, Wife filed a motion seeking attorney's fees for her efforts in "Florida and the Bahamas and elsewhere in an attempt to enforce the judgment and other" court orders, and additional reimbursement for the children's medical insurance and uncovered medical costs. After a hearing, the district court credited Husband for a November 2003 child support payment of $136,055.16,[3] but concluded that Husband had not otherwise paid certain amounts for alimony, the children's health insurance and uncovered medical expenses, the money necessary to reimburse the children's trusts, the expert's fees, and the aforementioned contempt sanction. The district court also found that Wife had incurred in excess of $433,017.96 in attorney's fees to recover the amounts due from Husband because of his

---

2. The district court stated that Husband "is a person of some wealth, having an interest in real property, stocks, bonds and other securities, trusts, cash and various other assets."

3. Wife testified that Husband's mother "arranged to pay the child support to have the warrant lifted so that [Husband] could come back to the United States."

"failure to abide by" its orders, ordered Husband to pay Wife $2,488,365.62, and awarded her $433,017.96 in attorney's fees.[4] It does not appear that Husband appealed the district court's order.

[¶ 8] In March 2005, Husband filed a motion requesting that Wife account for "all money, shares of stock, real estate, or other property, and proceeds, she has obtained, by enforcement or other collection efforts" pursuant to the district court's original judgment. Wife submitted an accounting. She also asked the district court to award her $196,930.17 for attorney's fees and costs she had "incurred since November 2003 because of [Husband's failure] to comply with the judgment" and filed the affidavit of an attorney who stated that such fees and costs were reasonable. Husband opposed Wife's request because the district court did not award Wife any attorney's fees in the original judgment and the district court did not have the authority to award Wife attorney's fees or costs for her subsequent efforts to enforce the judgment.

[¶ 9] The district court held a hearing on the matter in May 2005. At the hearing, Wife testified extensively about her difficulty enforcing the district court's judgment against Husband; Husband was still not paying willingly, which forced Wife to attempt to "garnish" Husband's known assets. Wife's efforts, and the bulk of the attorney's fees and costs generated therefrom, were concentrated in the Bahamas.[5] Wife testified that it was necessary to retain attorneys in both Florida and the Bahamas because "there are two different jurisdictions involved so it requires attorneys in both of those places."[6] The proceedings in the Bahamas included Husband's appeal of an asset freeze order, which appeal was ultimately dismissed, and

"several hearings" involving "all sorts of procedural and philosophical issues" in an attempt to persuade a Bahamas court to recognize the Wyoming district court's judgment. Wife testified that she recently obtained a partial summary judgment against Husband "personally," "so that whatever he holds personally in the Bahamas he is required to pay and they won't let the money just stay there in the Bahamas without it being distributed." She must now try to pierce Husband's "irrevocable trust" (presumably an asset protection trust) and his other business entities in the Bahamas, and she "could be years" from actually collecting the amounts Husband owes her in the instant case.

[¶ 10] It appears that the balance of Wife's attorney's fees and costs stem from: 1) a lawsuit Wife filed in Florida relating to the $550,000 condominium previously referred to herein; 2) a garnishment involving a Virginia law firm; 3) two garnishments in Ohio, as well as consultations with attorneys there regarding the death of Husband's mother—according to Wife, Husband should inherit "several million dollars" and Wife began to explore how she might access that money in order to satisfy the judgment; 4) a garnishment in Iowa—a bank account has been frozen but the bank has not distributed any proceeds to Wife; and 5) various related representation provided by Wife's Wyoming attorney.

[¶ 11] The district court ordered Husband to pay Wife $2,511,236.36 in principal and interest after crediting Husband for the $1,603,302.98 in total assets Wife had collected to date ($113,491.27 of which Wife had collected via two garnishments since the district court's previous order). The district court also found that Husband "continued to

---

4. The $433,017.96 apparently included the $241,000 the district court awarded Wife in the prior proceeding.

5. The Bahamas figure prominently in this case. After the parties had accumulated substantial assets, Husband "wanted to move offshore" in "an effort to minimize taxes," so the parties moved to the Bahamas in 1989. *Breitenstine*, ¶ 4, 62 P.3d at 589. Wife testified that they bought some property, including a home and a villa, during the marriage and proceeded to live in the Bahamas for about eight years. However,

the Bahamas is also where Husband engaged in the fraudulent conduct we previously detailed herein, including his transfer of substantial assets into an asset protection trust and other entities.

6. She was also required to retain an additional Bahamas attorney "from the Queen's Council because we were going to have to go to the supreme court in the Bahamas." According to Wife, this attorney was one of only three such attorneys in the Bahamas.

fail to abide by [its] orders," forcing Wife "to continue to expend funds on legal counsel and costs in both this country and [the Bahamas] and [to incur] an additional $196,930.17 in attorneys fees and costs. These fees are reasonable." Wife submitted, and the district court received, an exhibit containing itemized bills for the attorney's fees and costs Wife paid in attempting to enforce the district court's original judgment. It ordered Husband to pay Wife the attorney's fees that it had previously awarded her, and awarded Wife $196,930.17 in new attorney's fees. Husband now appeals the district court's decision.

## DISCUSSION

[¶ 12] Husband contends on appeal that Wyo. Stat. Ann. § 20–2–111 authorized the district court to award Wife attorney's fees and costs for "funds needed during the pendency of the litigation," but not for "proceedings to enforce a money judgment against her former spouse following the divorce decree." He argues that each party was to pay his or her respective attorney's fees and costs according to the original judgment, and "it is beyond reason to believe that a person who obtains a money judgment in Wyoming can take it to sister states, or to foreign countries, begin enforcement proceedings, and return to the Wyoming 'well' periodically for judicially gifted attorney fees and costs, until it is finally satisfied." This argument poses a legal question, and we review such a question *de novo* without affording deference to the district court's decision. *Finch v. Farmers Co–Op Oil Co.*, 2005 WY 41, ¶ 7, 109 P.3d 537, 541 (Wyo.2005).

[¶ 13] Wyo. Stat. Ann. § 20–2–111 provides as follows:

In every action brought for divorce, the court may require either party to pay any sum necessary to enable the other to carry on or defend the action and for support and the support of the children of the parties during its pendency. The court may decree costs against either party and award execution for the costs, or it may direct costs to be paid out of any property sequestered, in the power of the court, or in the hands of a receiver. The court may also direct payment to either party for such purpose of any sum due and owing from any person.

[¶ 14] We have previously interpreted this statutory language "as authorizing the reimbursement of a party's attorney's fees in proceedings to modify or enforce divorce decrees, as well as in original actions for divorce." *Broyles v. Broyles*, 711 P.2d 1119, 1129 (Wyo.1985). *See also Roberts v. Roberts*, 816 P.2d 1293, 1298 (Wyo.1991) (statute "interpreted to authorize the reimbursement of a party's attorney's fees in proceedings to modify or enforce divorce decrees"); *Haltom v. Haltom*, 755 P.2d 876, 879 (Wyo.1988) (statute considered "as authority to award attorney's fees in an action for divorce or any continuing litigation of such action"); *Prentice v. Prentice*, 568 P.2d 883, 886 (Wyo. 1977); *Karns v. Karns*, 511 P.2d 955, 958 (Wyo.1973); and *Ulrich v. Ulrich*, 366 P.2d 999, 1002 (Wyo.1961). This approach clearly anticipates that a court may, in its discretion, award attorney's fees and costs to a party in such a proceeding subsequent to the entry of the original divorce decree or judgment. *See, for example, Rocha v. Rocha*, 925 P.2d 231, 233–34 (Wyo.1996) (custody modification); *Delgado v. Delgado*, 773 P.2d 446, 448–49 (Wyo.1989) (recognizing statutory authority for award of attorney's fees in contempt proceeding to enforce visitation rights, but remanding for more evidence on the amount and reasonableness of attorney's fees and costs); and *Hendrickson v. Hendrickson*, 583 P.2d 1265, 1268 (Wyo.1978) (fees awarded for appeal of divorce decree).

[¶ 15] Our decision in *Haltom* is noteworthy. In that case, the parties had been "granted a dissolution of marriage, and a stipulated judgment was entered" by a California court, which judgment "incorporated by reference the parties' marital and property settlement agreement." *Haltom*, 755 P.2d at 877. The husband subsequently registered the California judgment in Wyoming. Each party then asked a Wyoming district court to enforce the California judgment against the other party, particularly with respect to ordering the transfer of money and other personal property. *Id.* The district court resolved the issues presented by the

parties and awarded the wife $1,502 in attorney's fees and costs, as well as accruing attorney's fees. *Id.* at 877–78. On appeal, we reversed the district court's decision to the extent that it improperly modified the California judgment, found that the husband was estopped from claiming an interest in some property because he had not complied with the California judgment, and upheld the award of attorney's fees and costs to the wife pursuant to Wyo. Stat. Ann. § 20–2–111. *Id.* at 878–79.

[¶ 16] The Nebraska Supreme Court similarly applied statutory language nearly identical to Wyo. Stat. Ann. § 20–2–111 in *Miller v. Miller*, 160 Neb. 766, 71 N.W.2d 478 (1955). In *Miller*, 71 N.W.2d at 479, the district court granted the wife a divorce and ordered the husband to pay the wife alimony. The wife later requested that the district court award her attorney's fees " 'incurred ... in enforcing collection' " of the alimony. *Id.* at 480. The district court granted this request and awarded the wife $1,500 in attorney's fees. *Id.* The husband appealed the district court's decision and the Nebraska Supreme Court's reasoning was, in pertinent part, as follows:

Appellant [the husband] argues that there was no proceeding in court incidental to procuring satisfaction of the alimony judgment and that there is neither statute nor uniform course of procedure which authorizes the allowance made to appellee [the wife]. This contention may not be sustained. If a defendant in a divorce case fails to satisfy a judgment for alimony rendered therein in favor of the plaintiff according to its terms, and the plaintiff employs counsel to enforce it and this is accomplished with or without court proceeding, the court in which the judgment was rendered has discretionary power by virtue of section 42–308, R.R.S.1943, to require the defendant to pay to the plaintiff a reasonable sum as compensation for the services of her counsel in obtaining satisfaction of the judgment. The relevant part of section 42–308, R.R.S.1943, provides: "In every suit brought * * * for a divorce * * * the court may, in its discretion, require the husband to pay any sum necessary to enable the wife to carry on or

defend the suit during its pendency; and it may decree costs against either party * * *." In *Lippincott v. Lippincott*, 152 Neb. 374, 41 N.W.2d 232, 235, it is said: " * * * the trial court has discretionary power and authority in a divorce action to require the husband to pay any sum necessary to enable the wife to carry on or defend the suit during its pendency, and decree costs against either party. Section 42–308, R.S.1943. Actions for divorce are conducted in the same manner as other suits in courts of equity, and the trial court has authority to decree costs and enforce its decrees as in other cases. Section 42–307, R.S.Supp., 1949. * * * The action at bar was * * * a proceeding in the original action during its pendency, to obtain an allowance of expenses and attorneys' fees as a judgm[e]nt for costs, necessitated in order to enforce and make effective the provisions of the court's decree, which defendant had * * * refused to perform * * *. In that connection, the court retained jurisdiction of the divorce proceedings at all times, whether the decree so provided or not, to enforce its decree with regard to compliance with the award of alimony. * * * Contrary to defendant's contention, dissolution of the marital relations by the divorce decree did not terminate the authority of the court to allow such expenses and attorneys' fees." ...

*Id.* at 483–84 (internal citations omitted). *See also Schaeffer v. Schaeffer*, 106 Mich. App. 452, 308 N.W.2d 226, 229 (1981).

[¶ 17] In the instant case, it is apparent from the record (including the accounting and itemized legal bills Wife submitted to the district court, as well as Wife's testimony) that Wife incurred the attorney's fees and costs at issue while attempting to enforce the district court's judgment against Husband. Husband does not argue otherwise. Wife's efforts were occasioned by Husband's continued failure to comply with the judgment and have been further complicated by Husband's fraudulent conduct leading up to the divorce proceedings. We conclude that Wyo. Stat. Ann. § 20–2–111, as previously interpreted or applied in our decisions, authorized the

district court to award Wife attorney's fees and costs for this purpose.

 [¶ 18] Husband also claims, in six sentences of argument in his appellate brief, that Wife failed to demonstrate that most of the attorney's fees and costs the district court awarded her were reasonable.[7] It is true that the "party seeking to recover attorney's fees bears the burden of demonstrating the reasonableness of the fees and must submit an itemized bill reflecting the time and rate charged." *Black v. De Black,* 1 P.3d 1244, 1252 (Wyo.2000). In that regard, we note that Wife testified extensively about the fees during the hearing in this matter and submitted itemized bills for the attorney's fees and costs she claimed. She also filed the affidavit of an attorney who reviewed these bills (which bills total approximately 104 pages), consulted Wife about the bills, and stated that such fees and costs were reasonable. That evidence essentially remains undisputed in the record.[8]

 [¶ 19] We have said that the "determination of reasonableness is within the exercised discretion of the trial court." *UNC Teton Exploration Drilling v. Peyton,* 774 P.2d 584, 595 (Wyo.1989). On appeal, the "burden is placed upon the party who is attacking the trial court's ruling to establish an abuse of discretion, and the ultimate issue is whether the court could reasonably conclude as it did." *Johnston v. Stephenson,* 938 P.2d 861, 862 (Wyo.1997) (appeal concerning reasonableness of attorney's fees). Husband's appellate argument consists of several general, conclusory statements such as: 1) attorney's fees "must have some reasonable connection to the work accomplished, and the result obtained for the client"; 2) "there is nothing novel or difficult about drafting a garnishment notice and serving it on a bank"; and 3) it is "difficult

to understand how a Wyoming attorney and financial advisor can render an opinion about the reasonableness of attorney time and fees in the Bahamas." Beyond that, the only pertinent legal authority that Husband cites is Wyo. Stat. Ann. § 1–14–126.[9] Husband merely states that this statute provides "as much guidance as any case law might regarding the determination of 'reasonable' attorney fees" but does not endeavor substantively to analyze the factors listed therein in light of the particular evidence received in the instant case. Husband did not present a sufficiently cogent appellate argument to establish that the district court abused its discretion in the instant case. Accordingly, we will not consider this issue further, and the district court is affirmed.

---

7. Husband's counsel stated in the district court that he did not question the reasonableness of the fees and costs billed by Wife's Wyoming counsel.

8. Husband's counsel cross-examined Wife but did not offer any evidence of his own at the hearing, and Husband did not personally appear at the hearing. Based on our review of the record, none of the information Husband's coun-

sel elicited during the hearing contradicted or impeached Wife's testimony, the accounting, the itemized bills, or the attorney's affidavit.

9. This statute lists several factors that a district court may consider in awarding reasonable attorney's fees to a prevailing party in a civil action. *See* Wyo. Stat. Ann. § 1–14–126(b) (LexisNexis 2005).